| 101 | 649 |
| 104 | 613 |
| 101 | 649 |
| 113 | 157 |
| 101 | 649 |
| 55a | 135 |
| 101 | 649 |
| 130 | 335 |
| 101 | 649 |
| 138 | 230 |
| 101 | 649 |
| 141 | 247 |
| 101 | 649 |
| 158 | 687 |
| 101 | 649 |
| 170 | 5227 |
| 171 | 5463 |
| 171 | 5688 |

BAILEY, *Plaintiff in Error*, v. WINN *et al.*

1. **Equitable Title:** NOTICE OF BY HOLDER OF LEGAL TITLE : TRUSTEES. One acquiring a legal title with notice of the equitable title being held by another will be regarded as a trustee of the legal title for the benefit of the equitable one.

2. ———— : ———— : ————. One who takes a deed from the owner of a legal title, but pays nothing for it, and is to pay nothing if he fails in a suit to recover the land, occupies no better position than his grantor.

3. **Mortgage :** CONDITION BROKEN : EJECTMENT BY MORTGAGEE. A mortgagee, after condition broken, may recover in ejectment against the mortgagor and those claiming under him, because, after condition broken, he is regarded as the owner of the estate.

4. ————: ASSIGNEE OF THE DEBT : EJECTMENT. But before the assignee of the debt can recover in ejectment, he must show a transfer of the legal estate to himself. The mere assignment of the debt, while sufficient to authorize a foreclosure, will not support an ejectment.

5. **Macon County Court of Common Pleas:** JURISDICTION WHERE TITLE TO REAL ESTATE IS INVOLVED : STATUTORY CONSTRUCTION. The act of the legislature ( Acts, 1874, p. 256 ), giving to the Macon county court of common pleas " concurrent original jurisdiction in all civil actions with the circuit court, except where the title to real estate is involved," confers on said court jurisdiction of a suit to foreclose a vendor's lien.

6. ———— : EXECUTION. Said court was authorized, under the act creating it ( Acts, 1874, p. 256 ), to issue executions on its judgments.

7. **Public Officer :** PRESUMPTION. An officer will, until the contrary is shown, be presumed to perform his duty.

8. **Dower :** VENDOR'S LIEN. A widow has no dower as against a vendor's lien.

9. **Conveyance :** UNRECORDED SHERIFF'S DEED. A sheriff's deed, though not recorded, is valid as against the judgment debtor and his heirs.

10. **Deed by Heirs:** PRIOR UNRECORDED ANCESTOR'S DEED. A deed from the heirs to one for value, and without notice, will prevail over a prior unrecorded deed, made by the ancestor (46 Mo. 239), but the rule will not avail to support a conveyance between the heirs, or from the widow to the heirs.

11. **Ejectment:** FORMER RECOVERY. One judgment in ejectment, in the absence of an equitable defense in the first suit, will not bar another suit between the same parties for the same land.

*Error to Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Berry & Thompson* and *Sears & Guthrie* for plaintiff in error.

(1) The patent from the state to Edward A. Edwards and his warranty deed to plaintiff were sufficient to warrant a recovery by plaintiff, as there was no adverse possession shown by the evidence, but a holding under the state or Macon county, and the statute of limitation was never set in motion.. (2) There is nothing in the evidence tending to show that the possession, originally friendly, was changed to an adverse possession, or that the state ever had any notice of such change. *Pratt v. Canfield*, 67 Mo. 50 ; *Pershing v. Canfield*, 70 Mo. 140, 142; *Budd v. Collins*, 69 Mo. 129 ; *Estes v. Long*, 71 Mo. 605. (3) The note for four hundred dollars given by Edward Edwards to David W. Edwards was for the purchase price of David W. Edwards' interest in the land in controversy, and was secured by a vendor's lien on the land. *Williams v. Crow*, 84 Mo. 298. And against this debt there could be no homestead or dower, and the widow of Edward Edwards had no interest in the land to convey, and hence conveyed none by her deed to her two children named. (4) The court of common pleas of Macon county had jurisdiction of an action on the four-hundred-dollar note of Edward Edwards before mentioned, and to declare and enforce

a vendor's lien against the land mentioned to secure its payment. Acts, 1874, sec. 2, p. 256. In such action the title to the land is not involved, though it may be affected. The title does not come in question or controversy. To be involved, as understood by the section above referred to, means to be entangled, to be litigated in the action, to be judicially examined and passed upon, to be divested out of one person and invested in another. *State ex rel. v. Court of Appeals*, 67 Mo. 199; *Fleitz v. Vickery*, 3 Mo. App. 592-3; *Cole v. Barron*, 8 Mo. App. 509-12; *McCullum v. Hedges*, 20 Mo. App. 688; *Brown v. Wright*, 25 Mo. App. 54; *Chambers v. Benoist*, 25 Mo. App. 520; *Robertson v. Railroad*, 18 Mo. App. 185. The following are cases where title to real estate is involved: *Moise v. Franklin*, 79 Mo. 518; *Baier v. Berberich*, 77 Mo. 413. (5) Assuming that the common-pleas court had jurisdiction of the action, and to find the fact that David W. Edwards was entitled to a vendor's lien against the land for the payment of his note, and to give judgment accordingly, then the sheriff's deed to Edward A. Edwards is conclusive on all parties, and invested said Edward A. Edwards with the better and paramount title to the land, and said deed is *prima facie* evidence of all facts recited therein, and the judgment on which it is founded is not subject to collateral attack. (6) It is clear the Macon county court of common pleas had jurisdiction to render judgment on the note. It did render a judgment on the note, and by virtue of such judgment the land was sold in regular form of law. The judgment could only be void as to the excess of jurisdiction, and not as to the part clearly within its jurisdiction. Laws, 1874, pp. 256, 257. (7) The trial court erred in refusing to admit (as it evidently did), on defendants' objection, the sheriff's deed, etc., on the ground that the Macon county court of common pleas had no jurisdiction. It most clearly had jurisdiction.

*B. R. Dysart* for defendants in error.

(1) The defendants were the true owners of the land, and had at least the equitable title, as against the patent of 1884, and both Edward A. Edwards and the plaintiff Bailey purchased with the full knowledge of defendants' title, and with the sole purpose of defeating their equity ; and defendants are entitled to recover even without invoking the statute of limitations. *Wickersham v. Woodbeck*, 57 Mo. 59 ; *Burch v. Winston*, 57 Mo. 62 ; *Railroad v. McGee*, 75 Mo. 523 ; *Sensenderfer v. Kemp*, 83 Mo. 581 ; *Swisher v. Sensenderfer*, 84 Mo. 104 ; *Widdicombe v. Childers*, 84 Mo. 382. (2) The plaintiff cannot recover on the sheriff's deed to Edward A. Edwards. *First.* The New Cambria court of common pleas had no jurisdiction to adjudicate and enforce a vendor's lien. A vendor's lien is an equitable title, not apparent and fixed by the parties, nor dependent upon contract, but implied by the law, and to be ascertained and established by the court. A suit to foreclose a vendor's lien has been likened to a suit for specific performance of a contract to convey land. It may be declared both in favor of the vendor and vendee. The title to the land is necessarily involved. When such a decree is rendered, the ordinary lien of judgments does not attach, but only such lien as the decree itself fixes, establishes and orders to be enforced. It is a judgment *in rem*. *Hockaday v. Lawther*, 17 Mo. App. 636 ; *Philips v. Schall*, 21 Mo. App. 38 ; *Paris v. Haley*, 61 Mo. 453 ; *Lewis v. Chapman*, 59 Mo. 371. *Second.* If not always and necessarily, yet it is clear, that title to land may be involved in a suit to foreclose a vendor's lien. A sale may be denied, a waiver may be claimed, or a conveyance to a third and innocent party. As the New Cambria court of common pleas was a court of special and limited jurisdiction, it devolved upon plaintiff to show from the record that the title to land was not involved. He should have offered in evidence

the petition and answer, that the court might judge from an inspection, whether title to land was involved. But he only offered the decree, execution and sheriff's deed. *Third.* The recitals in the decree show that the title to land was involved. That court adjudicated and decided upon, among other things, the title of David W. Williams, and made the decree subject to such title. It follows that the New Cambria decree, and all proceedings thereunder, were utterly void. *Fourth.* The execution, or order of sale, issued from the said court of appeals, and was, therefore, void, and the sale thereunder conveyed no title to the purchaser. Section 3 of the act establishing the court (Acts, 1874, p. 256) requires executions where land is to be sold to issue from the office of the circuit clerk. The judgment of the common-pleas court could not become a lien on land, nor have the force and effect of a judgment of the circuit court, until "after a transcript of such judgment shall be filed in the circuit clerk's office, and issuing of execution thereon." The word "transcript" means copy, and is required in addition to the "certificates of all judgments" mentioned in the last proviso in said section 3. *Fifth.* The plaintiff offered no evidence showing that any "transcript" or "certificate" of said decree was ever filed in the office of the clerk of the circuit court, and the courts cannot presume that any such were ever filed. It follows that said decree never became a complete and operative judgment, and the sale thereunder was void. *Sixth.* Edward A. Edwards never filed his sheriff's deed until May 4, 1880, a month and a day after the purchase by Sparrow for his wards, and after he had filed his deed for record and entered into possession. It follows that the curator and his wards purchased without notice. (3) Conceding that a mortgagee and trustee in a deed of trust may maintain ejectment after default, it has never been held that the assignee of a note secured by mortgage could sue in ejectment. Upon such assignment, the assignee becomes

the beneficiary of the mortgage, the legal title remaining in the assignor. The beneficiary in a deed of trust cannot maintain ejectment, because no title rests in him. *Siemers v. Schrader*, 88 Mo. 20; *Pickett v. Jones*, 63 Mo. 195. (4) All questions as to the ownership of the note from Edward Edwards to David W. Williams, claimed to be held and owned by Edward A. Edwards, were litigated by the circuit court in the case of Edward A. Edwards *v.* Sparrow, and the case appealed to the supreme court by Edwards; and as to said points the case is *res adjudicata.* *Preston v. Ricketts*, 91 Mo. 320; *Chouteau v. Gibson*, 76 Mo. 38.

BLACK, J.—This is ejectment for one hundred and twenty acres of land, the same being a part of school section 16, in township 59, range 16, in Macon county.

The defendants, Winn and Epperson, are the tenants of James D. Sparrow, who is the curator of the estates of David E. and Thomas M. Edwards, minor heirs of Edward Edwards, deceased. Sparrow was made a defendant on his own motion, and defends for his wards, though they are not made defendants. The answer of Sparrow sets up, and he made full proof of, the following facts: On November 2, 1847, the sheriff of Macon county, pursuant to an order of the county court, sold one of the three forty-acre tracts to Blan, who paid the purchase price; and in October, 1850, the county court ordered the clerk to certify the fact of payment to the register of lands to the end that a patent should be issued to Blan. He conveyed to Wilson, who purchased the other two forty-acre tracts in 1850, under an order of sale made by the county court. In 1853, Wilson conveyed the one hundred and twenty acres to Trewitt, who assumed and paid the purchase price of the eighty acres, agreed to be paid by Wilson. In 1858, Trewitt conveyed to Estes, and he conveyed to Agee in 1865, and the latter conveyed to Edward Edwards by a deed dated June 18, 1870. Edward

Edwards died in possession in 1877, leaving a widow and the two minor children before named.

Edward Edwards and those under whom he claimed had been in possession since 1850, but no patent was ever issued by the state to the above-named purchasers or their grantees. By a deed dated and recorded on April 3, 1880, the widow of Edward Edwards conveyed her interest to the wards of defendant Sparrow.

1. To defeat this equitable title in the minor heirs of Edward Edwards, the plaintiff relies upon three titles. The first is a patent from the state to Edward A. Edwards, dated January 25, 1884, and a deed from him to the plaintiff Bailey, dated in the following February. The patent is based upon a sale of the school lands, said to have been made in January, 1884, and Edward A. Edwards became the purchaser at $1.35 per acre. The land had been sold many years before to Blan and Wilson, and the purchase price paid into the township school fund, and it is difficult to account for this last sale on any other theory than this, that it was sold through the manipulations of Edward A. Edwards. Be that as it may, Edward A. Edwards had previously sued Sparrow in ejectment for this land, and failed in his suit. He had full knowledge of the equitable title of Edward Edwards and his heirs. Conceding that Edward A. Edwards acquired the legal title by the patent, still he acquired it with actual notice and knowledge of the equitable title in the heirs of Edward Edwards. He is but a trustee of the legal title, and holds it for the benefit of the equitable title, and, unless he has acquired the equitable title, the defendants should prevail in this suit. *Sensenderfer v. Kemp*, 83 Mo. 581; *Swisher v. Sensenderfer*, 84 Mo. 104.

As to the plaintiff Bailey, little need be said. Edward A. Edwards testified that there was no understanding between him and Bailey, whereby the latter is to deed back the land in case the plaintiff should

succeed in this suit ; but he says Bailey paid nothing for the land, and, if he fails in this suit, is to pay nothing. It is clear that Bailey is prosecuting this suit for Edward A. Edwards and occupies no better position than would Edwards, if he were the plaintiff.

2. The second alleged title of the plaintiff is this: Edward Edwards and his wife, by their mortgage deed, dated January 11, 1871, conveyed the one hundred and twenty acres of land to David W. Williams, to secure a note of the same date, executed by Edwards and payable to Williams for six hundred and seventy dollars, due in two years. David W. Williams acknowledged satisfaction in full on the margin of the record, under date of August 13, 1879. Plaintiff, however, produced in evidence the note with two assignments indorsed thereon, one from Williams to Edward A. Edwards, and the other from him to plaintiffs. Edward A. Edwards testified that he purchased this note from Williams on August 9, 1879, and had it assigned to himself on that day, and that the marginal satisfaction was made without his knowledge or consent, and after he had become the owner of the note. He says he had previously contracted for the note, had made several payments, and that the payment of $206.20, on August 9, was the last one. Concede that Edward A. Edwards became the owner of the note by assignment, and that he assigned it to plaintiff, still we do not see how the plaintiff can recover in this action of ejectment on the mortgage. There is no doubt but a mortgagee, after condition broken, may recover in ejectment against the mortgagor and those claiming under him. *Sutton v. Mason,* 38 Mo. 120 ; *Johnson v. Houston,* 47 Mo. 230. The assignment of the debt carries the security, so that the assignee may foreclose the mortgage. But the mortgagee may recover in ejectment, because, after condition broken, he is in law regarded as the owner of the estate. The legal title vests in him for the protection of the debt, but for no other purpose. Before the

assignee of the debt can recover in ejectment, he must show a transfer of this legal estate to himself. We have held that the beneficiary in a deed of trust to secure the payment of a debt cannot maintain eject-ment, after condition broken. *Siemers v. Schrader*, 88 Mo. 20. So in case of an ordinary mortgage, the mere assignment of the debt does not vest the title of the mortgagee to the land in the assignee. Jones on Mort-gages [ 4 Ed.] sec. 818. In the present case, there was no assignment of the mortgage or transfer of the estate by the mortgagee, and it follows from what has been said that plaintiff cannot recover on the mortgage, even if he is the owner and holder of the note.

3. For a third title, the plaintiff put in evidence a sheriff's deed to Edward A. Edwards, dated July 15, 1875. This deed was made by virtue of a sale under a special execution issued upon a judgment of the Macon county court of common pleas in favor of one David W. Edwards, and against Edward Edwards, rendered on April 28, 1875. By the second section of the act estab-lishing that court ( Acts, 1874, p. 256 ), it is provided : "Said court * * * shall have power and jurisdiction within said county as follows : *First*, concurrent orig-inal jurisdiction in all civil actions with the circuit court, except where the title to real estate shall be involved." The point is made that the common-pleas court had no jurisdiction of the suit, because it involved the title to real estate, and that the deed and decree upon which it is based are void. The pleadings in that case are not in evidence ; but, from the decree, it appears the suit was one of David W. Edwards against Edward Edwards. The findings made by the court disclose the following facts : These two persons purchased the one hundred and twenty acres of land from Andrew Agee in 1869, at the agreed price of sixteen hundred dollars. They paid, at the time of the purchase, one thousand dollars, of which amount David paid four hundred

dollars, and Edward six hundred dollars. David gave. Agee his note for the balance of the purchase price, namely, six hundred dollars, and Agee executed to David a bond for deed. . David turned this title bond over to Edward, and the latter paid the debt due to Agee, and received a deed. Edward executed his note to David for four hundred dollars, being the amount paid by the latter to Agee. The decree establishes a vendor's lien in favor of David for $498.50, being the amount due him on the last-named note, subject to a mortgage (deed of trust, it is called) from Edward Edwards to David W. Williams. From this statement, it will be seen the suit was one for the sole purpose of enforcing a vendor's lien.

This court has appellate jurisdiction "in cases involving title to real estate." It has been the constant ruling under this clause of the constitution that cases having for their sole object the enforcement of tax bills and mechanics' liens, and the foreclosure of mortgages do not involve the title to real estate. *Baier v. Berberich*, 77 Mo. 414; *Syenite Granite Co. v. Bobb*, 97 Mo. 46; *Corrigan v. Morris*, 97 Mo. 174. It is not enough that the judgment, when carried into execution, will affect the title to land. The title must be involved in the suit itself, and be a matter about which there is a contest. In the case before us, there was no contest, controversy or dispute as to who had, or was entitled to have, the title to the land. The court was not called upon to make any adjudication concerning the title. Edward Edwards was the admitted owner. We cannot see that this case differs in principle from one to enforce other liens. We conclude the suit did not involve title to real estate, and the case was, therefore, within the jurisdiction of the common-pleas court.

4. Further objections are made to the sheriff's deed because the execution was issued out of the common-pleas court, and not the circuit court, and because it does not appear that a transcript of the judgment was

filed in the office of the clerk of the circuit court. The act establishing the common-pleas court gives to it all the powers of a court of record, and provides that transcripts from justices of the peace, for a designated portion of the county, may be filed therein; and that sales of real estate, under its judgments and decrees, must be made at same term thereof, and "be conducted in all respects as sales under executions issued from the circuit court." The third section provides: "The judgment of said court shall be a lien upon real estate, and in all other respects have the same force and effect of judgment of the circuit court, after a transcript of such judgment shall be filed in the circuit clerk's office, and issuing of executions thereon; and sales of real and personal estate shall be governed by the same laws that govern such matters in the circuit court;" and it is made "the duty of the judge of said court to file in the office of the clerk of the circuit court a certificate of all judgments rendered and transcripts filed in said court within six days after the rendition or filing thereof, setting forth briefly the names of the plaintiff and defendant, and the amount and date of judgment."

The act establishes a court, and in general terms confers upon it the powers and duties of a court of record. The power to issue executions is an incident to such courts, unless denied, and no such denial is found in the act. On the contrary it contemplates, throughout the various provisions, that the court thereby created shall have the power to carry into effect its own judgments, as well as those of justices of the peace. The execution was sued out of the proper court.

That part of the third section, first quoted, is involved, and the meaning is not clear. It provides for the filing of a transcript of the judgment in the circuit court. The transcript here mentioned must be the certificate of judgments mentioned in the subsequent part of the section. The certificate which the judge is required to make must state the names of the parties to

the suit; and the amount and date of the judgment. It cannot be that the legislature intended that both a full transcript and the certificate should be filed in the office of the clerk of the circuit court. As executions must issue from the common-pleas court to carry into effect its judgments, no reason is seen why a full transcript of the judgment should be filed in the circuit court. This special court held its terms at New Cambria, away from the county seat where the public records were kept; and the chief object in requiring the judgments to be certified to the circuit court was that there might be evidence in that court of the existence of judgments in the common-pleas court. The duty of certifying the judgments to the circuit court is devolved upon the judge and not the parties litigant, and until the contrary appears it will be presumed that he performed the duty thus enjoined upon him. Even if he failed to file the certificate or transcript in the office of the clerk of the circuit court, we do not say or intimate that the sale would be void.

5. The sheriff's deed was executed in 1875, before the death of Edward Edwards, but not recorded until May 4, 1880. The deed from the widow to the minor heirs of Edward Edwards was executed on April 3, 1880, and the defendants base a claim on the priority of this record. The sheriff's deed, though not recorded, was valid as against Edward Edwards. The heirs, as against their ancestor's grantee, have no title at all; and the widow has no dower, as against a vendor's lien. It is now the law of this state that a deed from the heirs to one for value, and without notice, will prevail over a prior, unrecorded deed made by the ancestor. *Youngblood v. Vastine*, 46 Mo. 239. But we do not see how the heirs can build up a title by deeds from one to the other or by a conveyance from the widow.

6. There is in this record a copy of the judgment and bill of exceptions in the former ejectment suit of Edward A. Edwards against the defendants Epperson

and Sparrow. The judgment was for defendants. The pleadings in that case are not before us in this one, and there is nothing to show that any equitable defense was pleaded; so that the rule that one judgment in ejectment is not a bar to the prosecution of another between the same parties for the same land must be applied in this case.

The judgment is reversed and the cause remanded. All concur.