Riley v. Vaughan.

RILEY v. VAUGHAN, *et al.*, *Appellants.*

Division One, May 22, 1893.

1. **Husband and Wife, Indebtedness Between:** LAWS OF ILLINOIS. Where a husband receives from his wife money inherited by her and uses it in his business, there is under the laws of Illinois, an implied promise on his part to repay her, and as between them a valid indebtedness from him is created.

2. ——: ——: FRAUDULENT CONVEYANCE. Where such husband, while in failing circumstances, in good faith transfers property to his wife in payment of a valid debt, or if, with fraud on his part but without participation therein by the wife, he makes such transfer, the transaction will be upheld.

3. ——: ——: ——. The evidence in this case *held* to show that the purpose of the husband in causing property to be conveyed to his wife was to hinder and defraud his creditors.

4. ——: ——: ——. Where a wife gives her husband unlimited control over her property and permits him to invest it in his own business for a series of years, she will not be permitted when he is in failing circumstances to withdraw it from the just claims of creditors, who, in good faith, gave the husband credit, relying on his ownership.

*Appeal from Clinton Circuit Court*—HON. J. M. SANDUSKY, Judge.

AFFIRMED.

*William Henry* and *Porter & Woodson* for appellant.

(1) The husband may prefer his wife as a creditor and dispose of his property to her in satisfaction of a *bona fide* debt. *Bartlett v. Umfried,* 94 Mo. 530; *Frost*

*v. Steele*, 48 N. W. Rep. 413; *Hart v. Leete*, 104 Mo. 317; *Bank v. Croco*, 26 Pacific Rep. 942; *Laird v. Davidson*, 25 N. E. Rep. 7.    (2) The wife's claim to property received from her husband in satisfaction of a *bona fide* debt is not affected by a fraudulent intention of her husband if she receives the property in good faith as payment; nor is it fraudulent on the part of the husband merely because the transfer has the effect to delay other creditors; and the wife is entitled to the property so conveyed to her, notwithstanding her husband's insolvency, or her knowledge of such insolvency.    Bump on Fraudulent Conveyances [3 Ed.], p. 183; *Dice v. Irvin*, 11 N. E. (Ind.) 488; *Holmes v. Braidwood*, 82 Mo. 610; *Sexton v. Anderson*, 95 Mo. 379; *Albert v. Besel*, 88 Mo. 150; *Shelly v. Boothe*, 73 Mo. 74; *Frederick v. Allgaier*, 88 Mo. 598.    (3) It is not necessary to the validity of a debt of the husband to the wife that the debt should be evidenced by writing. *Myer v. Houck*, 52 N. W. Rep. 235; *Brown v. Mitchell*, 9 S. E. Rep. (N. C.) 705; *George v. High*, 85 N. C. 99; *Dula v. Young*, 70 N. C. 450.    (4) While courts will scrutinize closely claims of the wife against her husband in controversies between the wife and creditors of the husband, when the fact that the husband received the wife's money is established by proof, that fact establishes a liability against the husband and the wife is not required to show that the transaction was not a gift, or that the husband's liability has not been extinguished.    *Hill v. Bowman*, 35 Mich. 191; *Dice v. Irwin, supra*, p. 491; *Cole v. Lees*, 45 N. J. Eq. 779; *Jordan v. White*, 38 Mich. 253; *Patton v. Patton*, 75 Ill. 446.    In *Brooks v. Fowler*, 9 S. E. Rep. (Ga.) 1089, JENKINS J. says: "While a wife may legally give her property to her husband, a gift will never be presumed.    The evidence to support it must be clear and unequivocal and the intention of

the parties free from doubt." (5) The fact that the debt is old and would, as against other creditors, be barred by the statute of limitations, or that interest is allowed by the husband in computing the amount of the debt, are not objections which creditors can avail themselves of in this action. *Bank v. Iron Works*, 50 N. W. Rep. 505; *Dice v. Irwin, supra*; *Frost v. Steele*, 48 N. W. Rep. 418. Under the statutes of Illinois the land of Mrs. Vaughan and the proceeds thereof were her separate property and she had a right to deal with them in the same manner that the husband could property belonging to him. Statute of Illinois; *Whitford, et al. v. Daggett*, 84 Ill. 144; *Patton v. Patton, supra*.

*Riley & Hall, John A. Cross* and *James P. Thomas* for respondents.

(1) The evidence fails to show an unconditional agreement on the part of Vaughan to pay back to his wife the money borrowed from her. (2) Where a wife loans money to her husband without security therefor or written evidence thereof, with only a vague, indefinite understanding as to when, how, and under what circumstances or conditions she is to be paid, and such money is for a number of years, with her knowledge and consent, used by the husband in business as his own, he obtaining credit and contracting debts on the faith of owning the capital invested and holding himself out as the owner thereof, equity will not uphold a conveyance by the husband, after becoming insolvent, to the wife in payment thereof, as against creditors of the husband. *Besson v. Eveland*, 26 N. J. Eq. 468; *Luers v. Brunges*, 34 N. J. Eq. 19; *Bank v. Hamilton*, 34 N. J. Eq. 162; *Humes v. Scruggs*, 94 U. S. 22. (3) The married woman's act, Revised Statutes, 1889, sec. 6869, is intended as a shield for the wife and should never

be so construed as to be the means by which a fraud is perpetrated upon creditors by the husband and wife. (4) The statute of Illinois, also the statute of Kansas, where the transaction occurred, leave the wife absolutely free to give her money or personal property to her husband or assent to his reduction of the same to possession, by parol or acquiescing for a number of years in his use of the same as his own. (5) If the conveyance was made in payment of a debt, partly *bona fide* and partly fictitious, it is fraudulent as a whole. *Holt v. Creamer*, 34 N. J. Eq. 181; *Humes v. Scruggs*, 94 U. S. 28; *Cordes v. Straszer*, 8 Mo. App. 61; *Potter v. McDowell*, 31 Mo. 62. (6) If the value of the property conveyed exceeded the amount of the debt due Mrs. Vaughan, and she took it in payment thereof with knowledge of her husband's insolvency and of a purpose on his part to place the excess beyond the reach of his creditors, the conveyance is fraudulent. *Holt v. Creamer*, 34 N. J. Eq. 181; *Humes v. Scruggs*, 94 U. S. 28; *McVeagh v. Baxter*, 82 Mo. 518; *Potter v. McDowell*, 31 Mo. 62. (7) The conveyance by an insolvent husband of all his property to his wife will be closely scrutinized by courts of equity. The payment of a valuable consideration by the wife must be made out by proof of the most unquestionable character, clear, positive, and free from any suspicion of a fraudulent combination for the concealment of her husband's property from his creditors. Bump on Fraudlent Conveyance [3 Ed.], p. 306; *Benne v. Schnecko*, 100 Mo. 250; *Holthaus v. Hornbostle*, 60 Mo. 439; *Frank v. King*, 121 Ill. 250. (8) The evidence in this case is insufficient to establish an indebtedness on the part of Vaughan to his wife. (9) As the judge who tried this case in the court below had the advantage of seeing and hearing the witnesses as they testified, with the opportunity to observe their intelligence and their

demeanor and appearance while testifying, and the incidents and circumstances attending the trial, this court will, to a great extent, defer to his findings and conclusions. *Berry v. Hartzell,* 91 Mo. 132; *Cole County v. Madden,* 91 Mo. 613; *Mathias v. O'Neill,* 94 Mo. 520; *Jamison v. Bagot,* 106 Mo. 267.

MACFARLANE, J.—This is a suit in equity in the nature of a creditor's bill, brought by plaintiff as trustees for the creditors of Josiah Vaughan, to set aside certain conveyances of real estate made to defendant Mary E. Vaughan, by third persons, on the ground that the consideration was paid by the husband, and the deeds made to the wife, for the purpose of hindering, delaying and defrauding said creditors.

The petition charges defendant, Josiah Vaughan, being indebted to divers persons, naming them, and the respective amounts due them, which aggregate $4,041.25, and being then also the owner of a large stock of merchandise, in the city of Plattsburg, Mo., did, about the ———— day of August, 1889, with intent to hinder, delay and defraud said creditors, transfer and deliver the same to Bohart and Goff in exchange for certain real estate (which is described), consisting of a residence, business house, and some lots in the town of Lathrop, and with like fraudulent intent, caused the same to be conveyed to his wife, defendant Mary E. Vaughan. That said creditors had obtained judgments against said Vaughan and caused said land to be sold, under executions issued thereon which was purchased by plaintiff, and is now held, by him, under deeds from the sheriff, in trust for said creditors. A decree setting aside said conveyances, and vesting the legal title of the land in plaintiff, was prayed. The answer was a general denial.

The undisputed facts are, in substance, as follows: Defendants were married in the state of Illinois in 1875. The wife, at the time, was the owner, by inheritance, of seventy acres of land in that state. The husband was then a farmer and owned two horses given to him by his father. In the fall of 1876 the husband borrowed five or six hundred dollars and bought a small stock of groceries. The borrowed money was paid by sale of the horses, and from proceeds of wheat and corn raised on his wife's land. He sold out this business in 1878, and "came out about even." During the following year he had no regular business, lived in town, and "worked round at one thing and another." About the end of the year he commenced business in another town on a capital of five or six hundred dollars. Continued in this business until the winter of 1880, and in 1881 sold out. Had lost money. Had possibly $300 left after paying debts. In 1881 the land of the wife was mortgaged for $1,000. This money the husband received. In 1884 a mortgage for $2,100 was put upon the land, and the prior mortgage was paid and the husband received the remainder. At this time they moved to Kansas and the husband invested the money in the purchase of real estate in his own name. In 1887 the wife's land was sold for $3,500, and the proceeds, after paying the $2,100 mortgage was paid to the husband. The husband remained in Kansas, part of the time dealing in real estate, a short time merchandising, from 1884 to 1888. In November, 1888, he traded a tract of land, held in his own name, for a stock of merchandise in Plattsburg, valued at about $6,500, giving notes for the difference, $2,000. August 1, 1889, he had become indebted to wholesale merchants for goods to the amount of $4,041.25 Finding himself in failing circumstances at this time he traded the stock of goods to Bohart and Goff for the residence,

business house and some lots in Lathrop, a tract of eighty acres of farm land and $1,500 cash. The business house was valued at $2,400, the residence at $1,200, the equity in the farm land at $1,200. By direction of the husband the conveyance of all of the property was made to the wife.

The defense of the wife is, that the several sums raised by mortgage and sale of her land, and the rents, grain, etc., from her farm were loaned by her to her husband, on which he agreed to pay her interest and that the property was conveyed to her in good faith in settlement of the amount due her which she claimed, without interest, amounted to $3,990.

The court found the transaction fraudulent and set aside the conveyance to the wife and vested the title to the land in plaintiff and defendants appealed.

I. That Mrs. Vaughan inherited from her father seventy acres of land, and that the proceeds from mortgage and sale of the same, amounting to $3,500, was received and used by her husband does not admit of a doubt under the evidence. Of this amount $2,500 was received in the state of Illinois and $1,400 in the state of Kansas. The statutes of these states, which were offered in evidence, do not differ materially in respect to the rights and liabilities of married women. The supreme court of Illinois, speaking of the changes the statute of that state have effected upon the common law rights of the wife uses this language: "No question as to subordination to the common law rights of the husband can arise; for, backward as may be courts, or the profession, to recognize the situation, those rights are by the statute swept away and gone. She is entitled to own, hold, possess, and enjoy such estate precisely as if she were sole and unmarried. As to such estate and her relations thereto, she has no hus-

band; he is as a stranger, even during the coverture." *Patten v. Patten,* 75 Ill. 447.

Applying the statute as thus construed, in that state, to the facts in this case, we think we can properly say that the reception and use by the husband of the proceeds of the wife's land implied a promise on his part to repay her, and as between them a valid indebtedness from the husband to the wife was created.

II. It is well settled in this state, and elsewhere, that a debtor in failing circumstances, may give one creditor a preference to the exclusion of others, and that a "debt, due from a husband to the wife, stands on as good footing as a debt due to any other person and she may be given a preference over other creditors." *Hart v. Leete,* 104 Mo. 338; *Sexton v. Anderson,* 95 Mo. 379; *Frank v. King,* 121 Ill. 250; *Hill v. Bowman,* 35 Mich. 191; *Bank v. Croco,* 46 Kan. 630.

It is equally well settled that the right of one creditor of an insolvent debtor, to secure a preference over others is not affected by the fraudulent intent of the debtor, or by simple knowledge thereof on his part, if there was no actual participation therein. *Sexton v. Anderson, supra; State to use v. Mason,* 112 Mo. 374.

Upon the law and the undisputed facts the case stands thus: Defendant Josiah Vaughan became indebted to his wife and co-defendant, Mary E. Vaughan, in 1881, in the sum of $1,000, in 1884 in the sum of $1,100, and in 1887 in the sum of $1,400, and also some smaller sums; and in 1889, becoming insolvent, he caused the bulk of his property to be transferred to her in settlement of these debts to the total exclusion of most other creditors. If this transfer was in good faith, and without fraud on the part of the husband, or if with fraud, but without participation therein by the wife, then it must be upheld.

III. The evidence leaves no doubt in our minds, that the purpose and intent of defendant, Josiah Vaughan, in causing this property to be conveyed to his wife was to hinder, delay and defraud his creditors. In making written statements of his financial standing, upon the strength of which he was enabled to obtain credit, not only was no mention made of a debt to his wife as one of his liabilities, but on being directly asked if he owed any confidential, or other debts, not mentioned, he answered in writing that he did not. When pressed by his creditors he traded his stock of merchandise, valued at about $6,500, for which he took this real estate as part payment at a valuation of $5,000, though a part of it he had never seen. It is evident a low estimate was placed upon the goods and the land was valued above its real worth. No invoice of the goods was taken. The total indebtedness to the wife with six per cent. interest was about $500 less than the amount for which the land was taken. Of the $1,500 cash received for the stock of goods, about one-half was paid on a debt held by a brother of the purchaser, who assisted in making the sale, but no satisfactory account could be given of what was done with the remainder. The debts unprovided for were incurred in the purchase of the merchandise exchanged for this land. Nothing was paid on these debts. Every circumstance connected with this transaction is inconsistent with honesty of purpose and good faith on the part of the husband.

IV. The unlimited right of ownership of the proprety, inherited by Mrs. Vaughan from her father, implied and included not only the unrestricted right of disposal to her husband, which right is unfettered under the laws of Illinois and Kansas, but also imposed upon her the corresponding duty and obligation of so using and dealing with it as not to mislead and deceive others

to their injury. The confidence the wife imposed in the integrity of her husband, which induced her to give him unlimited control of her property and money, and permitted him to invest it in his own business for a series of years, and her reliance on his repeated assurances of repayment should not be allowed to shield the property from the just claims of those who, in good faith, gave the husband credit in reliance upon his ownership. The transfer of the legal title and possession of the property to her, before the claims of the creditors were asserted, could not strengthen her right, nor does the fact that she made frequent demands of payment aid her. The laws of the states of Illinois and Kansas gave her the right to enforce her demands against her husband, and the only reason she could give for not doing so was that she did not wish him to think "she had no confidence in him." Though, as she testified, making repeated demands of payment, she continued to supply him with money whenever it came into her hands. She took no note or other written evidence of indebtedness. She knew he was continually engaged in hazardous business enterprises, and was buying goods on credit and that the sole capital invested was the money she allowed him to use.

As was said in a case in which the facts were very similar to those disclosed in this record: "Having constantly consented that he should hold himself out to the world as the owner of this property, and contract debts on the credit of it, up to the very hour of his disaster, it would be against the plainest principles of justice, and utterly subversive of everything like fair dealing, to permit her to step in now and withdraw from the process of the law, put in motion by his creditors, the very property she had permitted him year after year to represent to be his, and the apparent ownership of which had given him his business credit and standing."

*Besson v. Eveland*, 26 N. J. Eq. 471. See also to the same effect *Humes v. Scruggs*, 94 U. S. 23; *Bank v. Hamilton*, 34 N. J. Eq. 162.

Under the circumstances disclosed in this case, it must be held that Mrs. Vaughan, by her conduct, participated in the fraudulent conveyance of her husband, and the judgment is affirmed. All concur, except BAR-CLAY, J. who is absent.