BALZ et al. v. NELSON et al., Appellants.

Division One, February 18, 1903.

1. **Appellate Jurisdiction:** TITLE TO REAL ESTATE: SUIT TO SET ASIDE DEEDS. The Supreme Court has jurisdiction of a suit brought by a judgment creditor of a husband, to set aside a deed to land made by him to a third party and by the third party conveyed to the wife, and to subject the land to the payment of the judgment against the husband. Such a deed involves title to real estate.

2. **Fraudulent Conveyance:** HOMESTEAD. A deed by a husband to his wife of his homestead can not be set aside as being in fraud of his creditors.

3. ————: TO WIFE: TO HINDER AND DELAY CREDITORS. A wife let her husband have $1,000, and three years later $2,350, and both claimed these sums were loaned to him, but she took no note or other evidence of debt, nor was any time specified when the money should be repaid, nor was any interest ever paid or demanded, although both testified that he was to pay her eight per cent. Both testified that he promised to protect her if he got into trouble, and when a child of plaintiffs was injured through his' negligence and they brought suit, before judgment they conveyed the property to her sister and she conveyed to the wife. Although he had then had. her money for ten years, she had not, prior to the time of the suit, demanded the money or security therefor, except once, about two months previously, when a part of his property was damaged by a cyclone, and then he gave no attention to the demand. *Held*, that the judgment of the trial court holding that the conveyance was fraudulent and intended by both husband and wife to prevent the plaintiffs from collecting their judgment, must be affirmed.

Transferred from St. Louis Court of Appeals.

MODIFIED AND AFFIRMED.

*S. T. G. Smith* for appellant.

(1) Husband and wife can contract together the same as individuals. Seay v. Hesse, 123 Mo. 463. (2) A debt due a wife from a husband stands on as good a footing as a debt due any other person, and

she may be given a preference over other creditors. Bank v. Winn, 132 Mo. 80; Hart v. Leete, 104 Mo. 337; Seay v. Hesse, 123 Mo. 450; Scott v. Klein, 61 N. W. (W. Va.) 918; McQuown v. Law, 18 Ill. App. 34; Fergusan v. Spear, 65 Maine 279; Rockford Shoe Co. v. Martin, 75 Iowa 112. (3) In the examination of questions of fraud, courts will look into all the circumstances, and while express and positive proof is not required, yet mere suspicion leading to no certain results will not be deemed sufficient to establish fraud. Ridge v. Greenwell, 53 Mo. App. 479; Waddingham v. Loper, 44 Mo. 136. (4) The right of one creditor of an insolvent debtor to secure a preference over others is not affected by the fraudulent intent of the debtor, or by knowledge thereof on his part, if there was no actual participation therein. Woolen Mills v. Wilson, 87 Mo. App. 145; Riley v. Vaughn, 116 Mo. 176. (5) The court indicated the theory on which he tried the case when he remarked: "There was no legal liability to pay the debt; it was merely a moral obligation; the statute of limitations would run against it; there was no legal liability on which she could maintain any recovery." (6) The statute of limitations does not run against a married woman. Besides, the transaction was executed and question of statute of limitations could not arise. Sutton v. Casselig, 77 Mo. 406; Waite on Creditors' Bills, 523. (7) Creditors have nothing to do with the homestead, for it is beyond their reach either at law or in equity. There can be no fraudulent conveyance of a homestead. Rose v. Smith, 167 Mo. 86; Bank v. Guthrey, 127 Mo. 195; Hart v. Leete, 104 Mo. 337. (8) The evidence showing the conveyance was made to secure the wife, if any decree of sale was to have been entered it should have been that all the property except the homestead should have been sold and the proceeds applied, first, to the payment of the money due the wife and interest thereon, the balance to the judgment of the plaintiff. Bank v. Winn, 132 Mo. 91; Gleitz v. Schuster, 168 Mo. 305. A return of *nulla bona* is necessary before a creditor's

bill will lie. Merry v. Freeman, 44 Mo. 521; Humphrey v. Atlanta Mill Co., 98 Mo. 542.

*C. S. Broadhead* and *Percey Werner* for respondents.

(1) The conveyances to Decker and Mrs. Nelson were, admittedly, made by Nelson and his wife with the intent to hinder and delay these plaintiffs, and, even though they had been made for a valuable and adequate consideration, are still void as to plaintiffs, because of the intent with which they were made. Cason v. Murray, 15 Mo. 378; Johnson v. Sullivan, 23 Mo. 474; Knox v. Hunt, 18 Mo. 180; sec. 3398, R. S. 1899; Lackland v. Smith, 5 Mo. App. 153. (2) A participation by the wife in a fraudulent attempt on the part of her husband to conceal or cover up his property, for the purpose of putting it beyond the reach of other creditors, though an honest or valid debt is thereby secured or paid, will render the whole transaction fraudulent as to both. Bank v. Winn, 132 Mo. 88; Riley v. Vaughan, 116 Mo. 176; Sexton v. Anderson, 95 Mo. 379; Farwell v. Myer, 67 Mo. App. 566. (3) A voluntary conveyance by one of all his property, thereby rendering himself insolvent, intending afterwards to contract debts, which he does contract, is fraudulent and void as to such subsequent creditor, although there was no existing indebtedness of the grantor at the time of making the conveyance, and so much the more so where it is done to protect his property from an existing liability. Snyder v. Free, 114 Mo. 376; Hoffman v. Nolte, 127 Mo. 120; sec. 3398, R. S. 1899, p. 847; Hurley v. Taylor, 78 Mo. 238; Fisher v. Lewis, 69 Mo. 629. (4) When conveyance by insolvent debtor is claimed to be made in payment of an antecedent debt, the burden is on the parties thereto as against a creditor attacking for fraud to prove bona fides. Wood v. Peebles, 25 So. 723; American Net & Twine Co. v. Mays, 33 S. E. 523, 57 N. Y. Sup. 724; Walsh v. Ketchum, 84 Mo. 430; Bucks v. Moore, 36 Mo. App. 536. (5) Issue of exe-

cution and return of *nulla bona* may be dispensed with when it is shown that the debtor is insolvent. Merry v. Freeman, 44 Mo. 518; Turner v. Adams, 46 Mo. 95; Iron Co. v. McDonald, 61 Mo. App. 569. (6) Gross inadequacy of price is one of the badges of fraud in a sale and becomes controlling when coupled with other circumstances to show fraud. Card v. Lackland, 49 Mo. 451; Briant v. Jackson, 99 Mo. 585.

MARSHALL, J.—This is a bill in equity to declare fraudulent and void and to cancel two deeds to certain real estate in the city of St. Louis, one from Nels Nelson and Sophie, his wife, to her sister, Emma Decker, and the other from Emma Decker to Sophie Nelson, and thereby to divest the title to said real estate out of Sophie Nelson and leave it in Nels Nelson, as it was before said deeds were made, and to have the land sold to satisfy a judgment in favor of the plaintiffs and against Nels Nelson. The circuit court entered a decree as prayed, and the defendants appealed to the St. Louis Court of Appeals. That court transferred the case to this court, on the ground that title to real estate was involved and hence this court alone had appellate jurisdiction. [Balz v. Nelson, 86 Mo. App. 374.]

The case made is this: In 1884 Sophie Nelson was the wife of William Kleddick. He died and she received two thousand dollars life insurance. She then married Nelson, and in 1885 she loaned him $1,000. About two years thereafter she sold some real estate she owned before her marriage to Nelson, and received therefor $1,350, and this with the remaining $1,000 insurance money, she also loaned Nelson. They both say he verbally agreed to pay her eight per cent interest, but he never did so. They both further say there was no note or other evidence given for the money borrowed, and no time specified when he should repay her. But they say he "promised if he got into any trouble he would protect her." She made no demand on him for the interest, nor for the loan, nor for

security or protection, until after the cyclone which struck St. Louis on May 27, 1896, and which damaged his property to the extent of about $3,500, and he paid no attention to that demand, and she did not then further insist. About four months after that time he was building a house, and through his negligence the plaintiff's child was killed. On January 16, 1897, the plaintiffs began suit against him for five thousand dollars damage for the death of their child. Three days after this suit was begun and after the summons had been served and after she knew of the suit, he and his wife conveyed three parcels of land that stood in his name on the records to her sister, Emma Decker, and she conveyed the same to Mrs. Nelson. The consideration expressed in these deeds was nominal. Their deed to Emma Decker was immediately recorded, but her deed to Mrs. Nelson was not recorded until November 19, 1897. In the meantime on September 1, 1897, and before the judgment in favor of the plaintiffs was rendered and before the deed from Emma Decker to Mrs. Nelson was put upon record, Emma Decker made a quitclaim deed to Nels Nelson for a portion of one of the tracts or parcels of land, and he sold it to an innocent third person for $4,100. Both Nels Nelson and Sophie Nelson testified that he had no other property than that covered by the deed to Emma Decker, and he admitted that for six years prior to the date of the trial of this cause, which was on May 15, 1899, he had done no work. Emma Decker acted in the matter simply to oblige her sister and brother-in-law. She paid nothing and received nothing for the land. The Nelsons say the conveyances were made in pursuance to his promise that "if he got into trouble, he would protect her," made at the time she loaned him the money. Thereafter, on January 4, 1899, the plaintiffs recovered judgment against him for $600, and it remained unsatisfied. The plaintiffs claim that the conveyances were fraudulent and void and intended to hinder, delay and defraud them as creditors of Nels Nelson, and that while an insolvent has a right to prefer any of his

creditors, still a conveyance that was intended to hinder, delay and defraud creditors is void even if made to one who is a bona fide creditor, if the creditor knew the conveyance was intended to defraud the grantor's creditors and if the creditor participated in the fraud, and that even conceding that the $3,350 in money was a loan and not a gift from Sophia to Nels Nelson, still the deeds in question here were intended to defraud his creditors and not as a preference to Mrs. Nelson. The trial court found the deeds to be fraudulent, and entered a decree for the plaintiffs, and the defendants appealed.

## I.

The primary question in this case is whether this court has jurisdiction.

It is a bill in equity to declare fraudulent and void the deeds of Nels and Sophie Nelson to Emma Decker, and from Emma Decker to Sophie Nelson, and for an order of sale of the real estate to satisfy the plaintiffs' judgment. Those deeds are muniments of title. They constitute the public record which declares to the world that the title is in Sophie Nelson. Without them, the title would in fact and according to the record be in Nels Nelson. The judgment to be rendered, if the plaintiffs succeed, will therefore strike down and cut out, root and branch, these muniments of title, and the effect of a judgment in plaintiff's favor will be to divest the title out of Sophie Nelson and revest it in Nels Nelson. The fact that after this is done the land can be sold as the land of Nels Nelson to satisfy the plaintiffs' judgment, does not change the character of the action nor take out of the case the main issue in controversy, to-wit, the question whether the land belongs of right, as to these creditors, to the wife or the husband, nor does the fact that if the husband should pay the plaintiffs' judgment and thereby take away the plaintiffs' right to question or controvert the title that is now in Mrs. Nelson, affect the matter. No such issue is raised, and no such condition presented in this case.

The only controverted issue is over the title. The subsequent sale of the land will follow of course if the deeds that vested the title in Mrs. Nelson are set aside and the title is thereby revested in Nels Nelson. The title to real estate is thereby directly and necessarily involved in this case, and therefore the appellate jurisdiction is in this court, and not in the Court of Appeals. [Price v. Blankenship, 144 Mo. 1. c. 209; May v. Trust Co., 138 Mo. 275; Hanna v. Land Co., 126 Mo. 9; Bank v. Ins. Co., 145 Mo. 127; Edwards v. Railroad, 148 Mo. 1. c. 516.]    See, also, Beland v. Brewing Assn., 157 Mo. 593, where the suit was to cancel a deed of trust after the debt was alleged to be paid; Crothers v. Busch, 153 Mo. 606, where the suit was to set aside a deed of trust on the ground of fraud; Truesdale v. Brennan, 153 Mo. 600, where the suit was to have a deed of trust declared to be entitled to priority over a deed of trust that was recorded before the former; State ex rel. v. Rombauer, 124 Mo. 598, where the suit was to set aside a judgment of condemnation of the land.

If the suit was simply to establish or enforce a special taxbill, or a mechanic's or vendor's lien or any other kind of a lien, the title to real estate would not be involved.    [State ex rel. v. Court of Appeals, 67 Mo. 199; Corrigan v. Morris, 97 Mo. 174; Bobb v. Wolff, 105 Mo. 52; Syenite Granite Co. v. Bobb, 97 Mo. 46; Baier v. Berberich, 77 Mo. 413; Bailey v. Winn, 101 Mo. 649.]    And the reason is that in all such cases the title is necessarily conceded to be in the defendant, for otherwise the plaintiff would not be entitled to a lien against the land in that suit, and therefore no judgment that could be rendered in the case could divest the title out of the defendant. The result of the establishment of the lien on the land and the sale of the land to satisfy the judgment might be that the defendant would lose the land, but the same is true in every case of a judgment against one who owns land. In such case the title to the land passes as the legal result of a sale on execution to satisfy the judgment, but the judgment itself rendered in the case does not strike down a

muniment of title or, *ipso facto* and without any execution, divest title from the defendant.

## II.

The remaining question is whether the deeds in question were honestly intended to create a preference in favor of the wife; or whether they were intended to hinder, delay or defraud the plaintiffs, as creditors of the husband, and if so, whether the wife participated in the fraud.

Since the passage of the married woman's act a married woman can contract with reference to her separate property as fully as any one could do, and she may become a preferred creditor of her husband. [Hart v. Leete, 104 Mo. 315; Riley v. Vaughan, 116 Mo. 176; Concurring opinion of MACFARLANE, J., in Seay v. Hesse, 123 Mo. l. c. 462.]

In Bank v. Winn, 132 Mo. l. c. 87, MACFARLANE, J., speaking of the effect of the wife's rights under the Married Woman's Acts, said: "But while this is so, the marital relation gave the wife no rights superior to those of the other creditors, and inasmuch as preference given to the wife indirectly inures to the benefit of the husband, transactions between them should be closely scrutinized in case fraud is charged. The law which places her upon an equality with other creditors also imposes upon her the same obligation to act honestly and in good faith, in taking preferences, as is required of other creditors. A participation by her in a fraudulent attempt on the part of her husband to conceal or cover up his property, for the purpose of putting it beyond the reach of other creditors, though an honest and valid debt is thereby secured or paid, will render the whole transaction fraudulent as to both. [Riley v. Vaughan, 116 Mo. 176; Sexton v. Anderson, 95 Mo. 379.]"

The debt Nelson owed his wife, treating it as a debt and not a gift, was $3,350. The property conveyed

Vol 171 mo—44.

by the deeds in question from him to her consisted of three parcels, first, of a lot on Gratiot street, worth not over $4,000, and subject to a mortgage for $2,800. This was his homestead and the equity of redemption amounted to only $1,200, which was not in excess of the value allowed by law and therefore he had a right to do what he pleased with it, and his creditors have no right to question it. [Bank v. Guthrey, 127 Mo. 195; Rose v. Smith, 167 Mo. l. c. 86.] The trial court therefore erred in declaring the conveyance of this lot void, and the judgment must be modified so far as it affects that lot. Second, a lot on Dolman street, valued at not more than $4,000 and subject to a mortgage of $3,500, leaving the equity of redemption worth about five hundred dollars. Third, a lot on Castleman avenue, having a front of fifty feet on which there are two houses. One half of this lot was sold to an innocent third person pending this action, for $4,100, and is not therefore now involved in this case. The other half has a house on it, and the house and lot are variously valued at from $3000 to $4300. There was a mortgage covering both of these lots, for $3000, and when one lot was sold this mortgage was paid, and after deducting the expenses of the sale, it left a surplus of $1000. The total value of the property conveyed by the husband to the wife, exclusive of the homestead, was therefore of the value of from $4500 to $5800 according to the various estimates. The husband received from the wife $1,000 in 1885, and $2,350 in 1887. They say he was to pay her eight per cent interest, but as the promise was not in writing as the statute requires (sec. 3706, R. S. 1899) such a rate of interest can not be computed. Assuming that she would be entitled to six per cent interest, as to which there is doubt (R. S. 1899, sec. 3705) the principal and interest on January 19, 1897, when the deeds were made, would have amounted to $5480. So that it cannot be said that the property conveyed was excessive security for the debt and interest, if the conveyance was an honest preference.

The trial court found the conveyance to be fraudulent, and the facts and circumstances afford ample support for that finding and are inconsistent with the theory of an honest preference. The following group of facts and circumstances are enough to afford support for the judgment of the circuit court: 1st. There was no note, *data* or other evidence of debt taken when the money was turned over to the husband, as would probably have been done in case it was to be a mere loan and not a gift. Second. No time was specified when the money should be repaid. Third. No interest was ever paid or demanded. Fourth. They both say he promised to protect her if he got into any trouble. From this the inference may be fairly drawn, especially when considered in connection with the other three facts above stated, that if he never got into trouble, he would never be called on to protect her or to return or repay the money. This is not the *usual* way of making loans of so large an amount of money. Fifth. She says she wanted her money or security after his property had been damaged by the cyclone in 1896, but he would not pay any attention to her. Debtors are not usually so deaf to the demands of their creditors. Sixth. The conveyances were made three days after the plaintiffs' suit for damages was filed. For ten years before that he had her money, had paid no interest, given no evidence of debt or security, and she had permitted this condition to exist. But as soon as the possibility of his having to respond to the plaintiffs for the wrong he had done their child arose, his regard for his obligation to his wife quickened, his conscience that had slumbered so long and so peacefully became suddenly aroused, and spurred him to honest action and prompted the preference. This may be true, but the trial court did not believe it. On the contrary that court held that the conveyance was fraudulent and intended by both the husband and wife to prevent these plaintiffs from collecting any judgment they might obtain against him. There is nothing in this record that discredits or casts doubt upon the finding

of the chancellor in this regard, and therefore this court will defer to the finding of the trial court.

The judgment of the circuit court is modified so as to exclude from its operation the homestead on Gratiot street, but in all other respects the said judgment is affirmed.

All concur.