Seay v. Hesse.

---

SEAY, *Appellant*, v. HESSE *et al.*

In Banc, June 25, 1894.

1. **Fraudulent Conveyance:** WIFE'S SEPARATE PROPERTY. A husband, who without the written assent of his wife, as provided by Revised Statutes, 1879, section 3296, invests in land money belonging to her, will hold the title in trust for the wife and she will be entitled to the property as against his creditors.

2. ———: HUSBAND'S SERVICES. The results of labor of a husband on land owned by the wife are not subject to levy.

3. ———: ———. A husband has the right to give his personal services and skill to the management of his wife's property without any other consideration therefor than the support and maintainance of himself and family.

*Appeal from Dent Circuit Court.*—HON. C. C. BLAND, Judge.

AFFIRMED.

*E. A. Seay* and *L. B. Woodside* for appellant.

(1) This case is clearly distinguished from the decisions of this court, which hold that where a husband invests his wife's money in real estate he is held as a trustee for her; for in this case in the purchase of the original tract he put in $700 of his own means. (2) Under the testimony in this case this $1,300 should only be considered as a debt, for, according to George Hesse's own testimony, she let him have it upon his promise to return it to her whenever she demanded it, and there is no evidence of any demand ever having been made. (3) An obligation of this kind would not draw interest. 2 R. S. 1889, sec. 5972. In the absence of evidence that property in the name of a married woman, acquired during coverture, has been paid for by her separate means, the presumption of the law is that it was paid for with those of the husband, and in such case it is not within the protection of the "married woman act." *Sloan v. Torrey,* 78 Mo. 623. Mrs. Hesse having constantly consented that her husband should hold himself out to the world as owner of the real estate involved in this case and to contract debts on its credit, she is now estopped to claim it as against his creditors. *Leete v. State Bank,* 115 Mo. 184; *Riley v. Vaughan,* 116 Mo. 169.

*James B. Harrison* for respondents.

(1) The burden rests upon the wife to show she has acquired the property in dispute as her separate estate in some manner pointed out by the statute; the burden then shifts upon the husband's creditors to show that her possession and transaction with her husband are fraudulent and not in good faith. (2) It is settled that the right of one creditor of an insolvent debtor to secure a preference over others, is not affected by the fraudulent intent of the debtor to secure a preference over others or by simple knowledge thereof on his part, if there was no actual participation therein. *Riley v. Vaughan,* 116 Mo. 176; *Sexton v. Anderson,* 95 Mo. 379; *State to use v. Mason,* 112 Mo. 374. (3) The principal question relied upon by appellants and so persistently urged as being applicable to this case is the doctrine of estoppel. Judge SHERWOOD, in *Rannells v. Garner,* 80 Mo. 483, says: "Estoppels in *pais* are not applicable to *feme covert,* except when regarded as *feme sole,* in consequence of possessing separate estates." *Cottell v. Spiess,* 23 Mo. App. 35, which was rendered long prior to the case of *Leete v. State Bank,* 115 Mo. 184, and its application has been judicially considered in the case of *Smith v. Johnson,* 15 Mo. App. 594; *Bankgert v. Bankgert,* 13 Mo. App. 144. (4) It is also an established doctrine of estoppel that it can not be invoked, unless what was said or done by the party to be estopped can be shown to have influenced the conduct of the other. *Spurlock v. Sproule,* 70 Mo. 503; *Acton v. Dooley,* 74 Mo. 63; *Rogers v. Martz,* 73 Mo. 64; (5) There can be no defense on the ground of estoppel where the defendant has neither acted nor altered his situation on account of what was said by the other party, nor unless the estop-

Seay v. Hesse.

pel was pleaded. *Noble v. Blount*, 77 Mo. 235. (6) Misrepresentations must be plain, not doubtful, nor matter of mere inference. The evidence must be clear that the wife knew that her husband was asserting the title and ownership to her property and that he was obtaining credit by reason thereof. *Blodgett v. Perry*, 97 Mo. 263; *Sole v. Ins. Co.*, 33 Mo. App. 664. (7) If this deed to Mrs. Hesse was made in good faith and without fraud on the part of the husband, or if with fraud but without participation therein by Mrs. Hesse, then it must be upheld. *Riley v. Vaughan*, 116 Mo. 176. (8) The court passing upon the consideration of the Victor mill property says that "the husband having acquired no property since marriage, except the products of his wife's estate, the result of his personal labor and the amount paid by him on property bought for his wife beyond her original fortune are not subject to a levy by his creditors, since his obligation to support his family authorizes him to work on her land without wages for their support;" this certainly is the law. *Cooper v. Ham*, 49 Ind. 393; *Wilson v. Loomis*, 55 Ill. 352; *Abney v. Deyo*, 44 N. Y. 343; *Lutie v. Joynes*, 2 Head, 514; *Hamilton v. Zimmerman*, 5 Sneed, 39.

BURGESS, J.—This is an action to charge real estate known as the Victor mill property, which was deeded to the defendant Elizabeth Hesse, with a judgment in favor of plaintiff and against George Hesse, her husband, upon the ground that the property was purchased with money and means of her husband, George Hesse, while he was indebted to this plaintiff, and conveyed to his wife, Elizabeth, for the purpose of hindering and defrauding plaintiff in the collection of his debt. The defense is that the property which was conveyed or traded for this real estate, although in

the name of George Hesse, her husband, was in fact the property of the wife, and the taking of the deed to the Victor mill property in the name of the wife was but an act of justice to her.

The deeds to Elizabeth Hesse to the half interest in the Victor mill property recite a consideration of $2,450, but Headrick, who made one of the deeds, testified that they estimated the interest in the mill which was conveyed at $1,750, and the personal property, stock in the mill, at $300, which was all conveyed to Elizabeth Hesse, and George Hesse gave therefor what was known as the Bressie farm (subject to a mortgage), at $1,200 and executed his note for balance, secured by mortgage on some personal property.

When the father of Elizabeth Hesse died in 1872, there was due him a note from one Chris Hesse for the sum of $2,000, secured by deed of trust on real estate one-half of which belonged to Elizabeth. In 1876 George Hesse bought from Chris the land last mentioned for $2,000, and in part payment therefor put in Elizabeth's half interest in said note, which amounted at the time to $1,300, including interest, and gave his note for the balance. He says that he paid this note from the profits made on the farm, but Knippenberg, a witness for defendant, says that he borrowed $750, from one Fred Bower to pay off this note. Both defendants stated that Chris Hesse owed her more than $1,300, but only that amount was collected.

In 1880 George sold the farm that he had bought from his brother Chris for $1,800, including some personal property; the farm, however, only brought $1,500. In 1881 he bought a mill in Crawford county, from one N. G. Clark, for $4,000, of which he only paid $500 in cash, and gave his notes for the balance, part of which were the foundation for plaintiff's judgment. He stayed there two and a half years, and paid

on those notes $1,500, and then sold the mill to one Fulton for $1,800 cash, Fulton agreeing to pay the balance of the notes. After selling the mill to Fulton he bought the Bressie farm, in Dent county, for $1,800, paying $1,200 cash, and giving a deed of trust thereon, executed by him and his wife, for $600, and taking the title to the farm in his own name. This deed of trust for $600 was still against the Bressie farm when he traded it to Headrick, and it was assumed by Headrick. It was in January, 1890, when he bought the Victor mill property and gave the Bressie farm therefor, subject to the deed of trust, giving his note for the balance, secured by a mortgage on some personal property.

Mrs. Hesse never at any time, so far as the evidence discloses, gave her husband and codefendant, George Hesse, by her assent in writing, authority to sell, incumber, or otherwise dispose of her money or property for his own use and benefit. She would not consent to a sale of the Bressie farm, unless the deed to the Victor mill property was made to her. The court found for defendants, and rendered judgment accordingly, and plaintiff perfected his appeal to this court.

The evidence clearly shows that at the time of the marriage of defendants, the husband had but little property of any value, not exceeding, all told, the sum of $100, while the wife received from her father's estate at least the sum of $1,300, which was invested in the farm in St. Charles county, purchased by defendant George from his brother Chris. This farm was subsequently sold by defendants at an advance of about $500, and the proceeds reinvested in a small tract of land in Dent county, upon which there was a mill. The money received by the defendant Elizabeth did not come into the hands of herself and husband until some-

time during the year 1876, after the month of March, so that whatever property rights George Hesse acquired in the money and property of his wife, if any, was after the passage of section 3296, chapter 51, Revised Statutes, 1879, which is as follows:

"Any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest or inheritance, or by purchase, with her separate money or means, or be due as the wages of her separate labor, or have grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband. This section shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife; *provided*, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property unless by the terms of said assent in writing, full authority shall have been given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit. * * *"

The original fund being the separate property of the wife, under this statute, when invested by the husband in land in his own name without her written assent, he held the title thereto in trust for her, and for her use and benefit, and it matters not that he paid over and above the amount of money which belonged to her, about $500, for this money, according to the testimony, was the product of the farm, and was his wife's also. As was said by this court in the case of *Broughton v. Brand*, 94 Mo. 169, "There having been no such assent in writing signed by the wife in this

case, her money, the gift of her father, coming to her during coverture, invested by the appellant, her husband, in the real estate in controversy, was her separate property, was so invested without her assent, and the legal title thereto taken by appellant in his own name, he holds in trust for her heirs as he did for her during her lifetime.   *   *   *''

While it is true that the proceeds arising from the sale of the first tract of land were re-invested in the other tracts, which were also sold, and the proceeds, with some accumulations thereto, finally invested in the property in controversy, which is sought to be subjected to the payment of plaintiff's judgment, the truth still remains, that the property was that of the wife, which her husband finally had conveyed to her.

But it is said that the $60 which the defendant paid in his personal labor on the Victor mill property, or his interest to that amount, and whatever amount he had paid on the purchase price of said property, over and above the original amount of money belonging to his wife, should be subjected to the payment of plaintiff's judgment, because of his own accumulations independent of the property of his wife.   The evidence is that George Hesse never acquired any property after his marriage that was not the profits and products flowing directly from the property of his wife, except the $60 for which he worked at the mill.   Defendants have a family of seven children.   The record shows that the husband voluntarily expended his labor, and the products thereof, in the care and keeping of his wife's property, and it does not appear that there was any contract or agreement for compensation either in the increase of property or otherwise.

In *Webster v. Hildreth*, 33 Vt. 457, it is said: "Equity has no jurisdiction   *   *   *   to compel men to work for their creditors, who may perversely prefer

to work for their wives and children and leave honest debts unpaid."

As was said in the case of *Feller v. Alden*, 23 Wis. 301: "For, if the farm were really the separate estate of the wife, as we have already said, the statute expressly declares that she may hold and enjoy it, with the rents and profits, in the same manner and with the like effect as though she were unmarried. It would seem to follow from this, that she might cultivate the farm and manage the personal property by means of any agency which any other owner of such property might employ, and the produce thereof, with the increase of stock, would belong to her."

In the case of *Gage v. Dauchy*, 34 N. Y. 293, the court says: "While the legislature leaves the husband the right and makes it his duty to live with his wife, he must necessarily live upon her farm, if they have no other place to live. Surely it could not have been the object of the legislature to deprive the wife of the benefit of his services. The idea that there should be an agreement between them as to wages is absurd; for the legislature has not yet changed the common law so as to allow them to make a business contract with each other. Certainly there is no way provided to enforce it. But, even upon the grounds of equity, there is no reason why the husband should be entitled to the growing crops which he helps to cultivate on her farm. The law still requires him to support his wife and family. If it was competent for the husband and wife to make an agreement in respect to his labor, they might agree that he should bring the amount of his wages into the house to be expended in providing them with food and clothing. As he is, by law, bound to provide for his wife and family, the whole support of the family might be cast upon him, while she used the rents, issues and profits of her separate estate to

enlarge her wardrobe, or to engage in some new business which the law allows her to carry on, on her sole and separate account without interference of her husband."

If the defendant George Hesse had acquired money or property from any source other than from the profits and products arising from the use and occupation of the property of his wife, and had invested it in the Victor mill property, in conjunction with that of the money or property of his wife, although the mill property was in her name, his interest therein by a proceeding in equity, as in the case at bar, might be subjected to the payment of the plaintiff's judgment, but such are not the facts in this case.

In the case of *Cooper v. Ham*, 49 Ind. 393, after an exhaustive review of all the authorities, the court says: "It is firmly settled by the foregoing authorities, that the first and highest obligation of a husband is to provide for the support, maintenance, and education of his family, and that, after this has been accomplished, he should give the best exertions of his mind and body to accumulate means for the payment of his debts. But, while this moral obligation rests upon a married man, there is no means known to the law by which it can be enforced."

George Hesse had the right to give his personal services and skill to the management of his wife's property, without any other compensation than the support and maintenance of himself and family. *Cooper v. Ham, supra.*

We think the plaintiff has no right to subject the property in question or any part thereof, or supposed interest of George Hesse therein, to sale for the payment of his judgment. Inasmuch as he did not put into the Victor mill property anything which was not the property of his wife, except the $60, for which he labored,

we do not feel that we would be justified in reversing the judgment on that ground alone. As we are satisfied with the ruling of the court below, the judgment is affirmed. All concur.

MACFARLANE, J. (*concurring*). The evidence clearly shows that defendants were married in 1876 and in August of that year Mrs. Hesse received by inheritance from her father the sum of at least $1,300. This money went into the hands of her husband with no other agreement than that he "would pay it to her whenever she demanded it," and this was merely verbal. Mr. Hesse used the money in buying and trading in real estate as detailed in the statement of Judge BURGESS. There was no evidence which tended to prove that these transactions were for the benefit of the wife until the Bressie farm was purchased in 1884. Mrs. Hesse testified that she understood the title to that farm was put in her name, and only learned differently when it was traded for the mill property in 1890. There was no agreement or understanding that the title to any of the other property was to have been taken in the wife's name.

Under this evidence, as between herself and the creditors of her husband, we can only treat the wife as one of his creditors for the amount of the money she permitted him to use. We can fairly infer from the evidence that a demand of payment was made in 1884, when the Bressie farm was purchased. A demand could be implied from the fact that the wife requested the title to that land to be put in her name. From that date she would be entitled to interest at six per cent. The interest for six years would make the amount due the wife about $1,800, while the cash payment for the mill was only $1,200.

Plaintiff insisted *first*, that the conveyance of the

mill.property in question was and is fraudulent as to creditors under the statutes concerning fraudulent conveyances; and, *second*, that defendant Mrs. Hesse is estopped to claim the property as her own as against her husband's creditors. This latter claim is put upon the ground that to permit the husband, for years, to deal with the property of the wife in his own name, and as belonging to him, and by means of which he obtained credit, would be a fraud upon creditors who dealt with him on the faith of his apparent ownership.

Prior to the married woman's act of 1875 the doctrine of estoppel *in pais* did not apply to a married woman, except as to her separate estate, for the very good reason that, being incapable of binding herself or her property by contract, she could not do so by mere words or conduct. *Henry v. Sneed*, 99 Mo. 425; *Rannells v. Gerner*, 80 Mo. 474; *Mueller v. Kaessman*, 84 Mo. 318. By the act mentioned she is invested with all the rights of proprietorship in her property, which carries with it the right of alienation and the right to bind herself with respect to it by contract. So it has been frequently ruled by this court. *Blair v. Railroad*, 89 Mo. 383; *Brown v. Bowen*, 90 Mo. 184; *Broughton v. Brand*, 94 Mo. 169.

If she can deal with others she must do so on the same principles of good faith as is required from others. She could no more take advantage of her own fraud than could another having the same right to contract. It seems to me to follow that, in respect to her statutory property, in order to prevent fraud, she would be estopped by her acts and declarations to the same extent as others, but not beyond. She can not be estopped by the words and conduct of her husband, unless he was acting within his authority as her agent and in her

behalf. Otherwise the husband's conduct can not estop the wife.

As to the right to contract, the statute emancipates the wife from the common law disabilities of coverture. In this respect the husband and wife are no longer one in law, but each is an independent, responsible person and therefore capable of contracting with each other. While the statute relieves the wife of the marital rights of her husband, over her property, it at the same time imposes on her, in respect to her property and the right to contract, the duties and obligations of an unmarried woman. This is the necessary result of the statute. If the husband comes into possession of the wife's money, by her permission and without reducing it to his possession and ownership, as required by statute, and under an agreement to repay her, he becomes her debtor for the amount so received. She would thus stand on the same footing as another creditor. She would possess the same rights to secure her debt, and would be bound to the same good faith in her dealing, as other creditors. So it was held in case the husband conveyed land to his wife in settlement of an indebtedness to her, "that, if the deed was made in good faith, in payment of a debt due the wife, it should stand, for the debt due the wife stands on as good footing, as a debt due any other person, and she may be given a preference over other creditors." *Hart v. Leete*, 104 Mo. 315. And again it was held that if the preference to the wife was made by her husband in fraud of other creditors, and she participated therein, it could not stand. *Riley v. Vaughan*, 116 Mo. 176.

We are unable to see either fraudulent participation in the act of Mrs. Hesse in having the title to the mill property placed in her name, even on the assumption that the act of the husband was fraudulent, which by no means appears; nor are we able to see any con-

duct on the part of the wife, as a creditor which would estop her to claim the benefit of the conveyances. There is no doubt of the *bona fides* of the debt due from the husband to the wife; and the evidence shows that the debt, upon which the judgment held by plaintiff was rendered, was for a balance due on the purchase of the mill in Crawford county in 1881. When Mr. Hesse sold this mill he required the purchaser to assume the payment of this unpaid purchase money. This occurred in about 1888. Thus it appears that defendant Hesse undertook to provide, and supposed he had provided, for the payment of this debt. He held the title to the Dent county farm in his own name until 1890. While so held plaintiff acquired no lien, or other legal or equitable claim upon it. He thus appears to have acted in perfect good faith. No suspicion of the want of good faith on the part of the wife in securing herself appears. The conveyance was for an adequate consideration, and, so far as appears, was in entire good faith and was not fraudulent under the statute.

We think the record equally barren of facts which would operate as an estoppel on the right of Mrs. Hesse to have the conveyance of the mill property in suit made to herself in satisfaction of her debt. The claim is predicated upon the fact that the wife permitted the husband to take possession of her money, and to use it in his own name for years, buying, selling and exchanging property, and permitting the property to stand in his name, without calling him to account or otherwise objecting, whereby a fictitious credit was given him. The case of *Leete v. State Bank*, 115 Mo. 203, is relied upon for this contention. To apply such a rule as is here invoked would estop every creditor. Suppose the husband had been dealing and trading, as he did, upon capital borrowed from a stranger, thereby giving him

a fictitious credit, could it be contended that the creditor would be estopped to secure his debt? When we separate the husband and wife, in respect to property rights and the right to contract, as the statute has done, it follows very clearly that the wife could only be estopped for conduct which would estop a stranger. Conveyances, from husband to wife should be closely scrutinized, yet when they are found to be for a full consideration, "the same protection should be afforded to them as to like transactions between third parties." *Bean v. Patterson*, 122 U. S. 500; *Garner v. Bank*, 14 Sup. Ct. Rep. 392, and cases cited.

For these reasons I concur in the conclusion reached by the majority of the court. In the view I take of the case, the question as to how far the principal, or *cestui que trust*, will be estopped, as to intervening rights of creditors, in permitting his agent or trustee to deal with the trust property in his own name, does not arise and need not be considered.