FINK et al., Appellants, v. McCUE et al., Respondents.

St. Louis Court of Appeals, March 5, 1907.

1. **APPELLATE PRACTICE: New Trial: Reasons for Granting New Trial.** Where the trial court sustains a motion to set aside a verdict and grants a new trial, giving no specific reason for its action, the appellate court must take into consideration all the grounds assigned in the motion and, if any one of them is sufficient, will affirm the judgment.

2. **HUSBAND AND WIFE: Husband as Agent of Wife: Husband's Earnings.** Where a wife rents land, the fact that her husband does all the work on the land, sowing, preparing and reaping the crop, does not give him any interest in the crop.

3. **PRACTICE: New Trial: Peremptory Instruction.** Where the court in effect instructed the jury to find for plaintiff upon an issue about which the evidence was contradictory, this was error justifying the sustaining of a motion for new trial.

4. ———: ———: **Instruction.** Where the trial court refused an instruction· upon an issue concerning which evidence was introduced, it was error, and justified the court in granting a new trial for that reason.

Appeal from Pike Circuit Court.—*Hon. David H. Eby,* Judge.

Affirmed.

*J. D. Hostetter* and *Pearson & Pearson* for appellants.

*Elliott W. Major* and *Frank J. Duvall* for respondents.

BLAND, P. J.—The action is in replevin to recover possession of seventy-one sacks of wheat, seized and levied upon by defendant McCue, as constable, to satisfy an execution issued to him by a justice of the peace, on a judgment in favor of one Henry Lee and against J. D. South, in the sum of one hundred dollars for services rendered as house servant and common laborer. The petition is in the usual form. The answer is a general denial and an affirmative allegation that J. D. South was the owner of the wheat, and justified the seizure and retention of the wheat by virtue of the execution against South and in favor of Lee. As a further defense, the answer alleged "that the plaintiffs and the said John D. South contrived and schemed together to cover up his property and prevent the collection of said judgment and debt on said execution; and charge further that John D. South's acts and those of the plaintiffs are a sham and a scheme and a fraud in law and in fact, and their claim to said property is a pretended claim, trumped up be-

tween plaintiffs and John D. South to defeat the said execution."

J. D. South is the husband of plaintiff Sarah South, who is the daughter of plaintiff Fink. Fink owned a farm in Pike county and J. D. South and family resided with him on said farm. Five years prior to August 1, 1904, J. D. South had rented the land of his father-in-law Fink from year to year. It appears from plaintiff's evidence that Fink had some misunderstanding with his son-in-law South and refused to rent him land in 1904, but instead rented to his daughter, Sarah South, by a written lease prepared by J. D. South, dated August 1, 1904, by the terms of which Fink rented to his daughter certain described lands for a term of twelve months, specifically described portions of which land, the lessee agreed to sow in wheat. Fink agreed to furnish the seed wheat, pay one-half the expenses of harvesting and threshing, and take as rent one-half the net proceeds of the wheat, which was to be sold to a nearby mill. The yield was five hundred bushels, and the seventy-one sacks levied upon was a part of the crop. Defendant's evidence shows that J. D. South owned a team of horses and some farming implements, all of which, on August 15, 1904, he mortgaged to Laura and James Burnett, his sister and brother-in-law, to secure a debt of eight hundred dollars. In the latter part of August, defendant McCue, as constable, levied upon the team to satisfy the Lee judgment, but on learning of the mortgage gave the team up and returned it to South. When the levy was made, Fink went to his neighbor, William Jewett, who testified as follows: "Mr. Fink came over and said they wanted my brother and I to take the land, provided Mr. South didn't want the land, didn't take it. He said the officers had the horses and he wanted us to put in the wheat. We went over then and went to plowing. I think Mr. South had been plowing up to that time. My brother and I plowed about a day. I think it was about nine

o'clock I plowed.    I think they got their horses back
the same day.   John D. South then plowed the land from
that time on and tended it and sowed the wheat.   He
is the husband of one of the plaintiffs here."

Fink testified he told Jewett he wanted him to plow
the land if South could not.   South was breaking the
wheat land when his team was levied on, and after it was
returned to him by the constable, he finished the breaking,
sowed the wheat, harvested it, bought and paid for the
binder twine, engaged a thresher and paid for the thresh-
ing.   Plaintiffs testified they furnished South the money
to buy the binder twine and pay for the threshing.
South also helped deliver a portion of the wheat to the
mill and was present when the levy was made.   The
deputy constable testified that when he made the levy,
Fink told him the wheat belonged to him, that South
had no interest in it; and as he was hauling the wheat
away from the premises, Mrs. South told him her hus-
band had no interest in it, that it belonged to her father.
Plaintiffs' evidence tends to show that in sowing, taking
care of, and marketing the wheat, J. D. South labored
for and was acting as the agent of his wife, and that
the mill checks given in payment for the wheat that was
marketed were made payable to Mrs. South and the
proceeds equally divided between her and her father.
J. D. South did not testify, though present in court dur-
ing the trial.

The verdict was for plaintiffs but on motion of de-
fendants for a new trial was set aside and an order
made granting a new trial.   The appeal is from this
order.   The trial court sustained the motion for new
trial generally and gave no specific reason for its action,
hence we are driven to take into consideration all the
grounds assigned in the motion, and if any one of them
is sufficient to justify the action of the court, to affirm
the judgment.

There is but one possible theory upon which defend-

ants can prevail in this action, that is, that J. D. South rented the land from Fink and cultivated the same as lessee and not as the servant or agent of his wife; for if his wife rented the land, the fact that he did all the work, in sowing and preparing the wheat for market, gave him no interest in the wheat, as he had the undoubted right to give his personal services, labor and skill to the management of the premises leased by his wife, for the benefit of his wife and family. He had the right to work for his wife and children and leave his honest debts unpaid. [Seay v. Hesse, 123 Mo. 450, 24 S. W. 1017, 27 S. W. 633; King v. King, 155 Mo. 1. c. 425, 56 S. W. 534; State ex rel. v. Jones, 83 Mo. App. l. c. 157; Loessing v. Loessing, 88 Mo. App. 494.]

The court gave the following instructions for plaintiffs:

"1. The court instructs the jury that there is no evidence that plaintiffs or either of them were engaged in any attempt to defraud Henry Lee as a creditor of John D. South.

"2. The court instructs the jury that there is no evidence in this cause that John D. South owned any interest in the wheat in controversy at the time it was levied on by defendants.

"3. The court instructs the jury that defendants plead in their answer that the wheat in controversy was levied on by them as the property of John D. South under an execution issued on a judgment in favor of Henry Lee against said John D. South; you are instructed further that there is no evidence in this cause that said wheat belonged to said John D. South at the time of its seizure by defendants, and therefore you are further instructed that defendants cannot justify their seizure of such wheat on the ground that it was at said time of seizure the property of said John D. South."

And for the defendants the following:

"1. The court instructs the jury that if they find and believe from the evidence in the cause that at the

time the defendants levied on the wheat in controversy under the execution issued in the Henry Lee judgment against John D. South that the plaintiffs were not the owners of the wheat in question and entitled to the immediate possession thereof, then your verdict must be for the defendants.

"2.   The court instructs the jury that this is an action commenced by the plaintiffs to recover possession of the property in dispute, and the burden of proof rests upon the plaintiffs and before they can recover in this action they must show to the satisfaction of the jury by a preponderance of the testimony, that at the time of the commencement of this action they had either a general or special property in, and a right to the exclusive and immediate possession thereof.   If the plaintiffs have failed to show this the finding should be for the defendants."

Plaintiffs' instructions were tantamount to a direction to find for plaintiffs.   Defendants' instructions are out of place, under any phase of the case, and are unsupported by any evidence, as there is none whatever tending to show the wheat was the property of some third person, not a party to the suit, and are also wholly inconsistent with defendants' contention, that the wheat was the property of J. D. South.   There is some evidence, re-inforced by the fact that J. D. South did not testify, from which a jury might find that the lease of August 1, 1904, was an afterthought and executed in furtherance of a scheme concocted by plaintiffs and J. D. South to make it appear that plaintiffs were the real owners of the wheat, for the fraudulent purpose of protecting it from levy and sale to satisfy Lee's judgment.   An instruction on this feature of the case was asked by defendants, but refused by the court.   We think this was error.   For this error and others herein pointed out, we think the court should have granted a new trial, and affirm the judgment.   All concur.