WOLFSBERGER, Respondent, v. MORT and FRITSCH, Defendants; FRITSCH, Inter-Appellant.

**St. Louis Court of Appeals, February 2, 1904.**

1. **FRAUDULENT CONVEYANCES: Husband and Wife: Husband's Earnings Given to Wife.** An insolvent debtor can not continuously give to his wife practically all his earnings and allow her with such gifts to acquire, in her own name and for her separate use, property and hold it exempt from the demands of his creditors.

2. ———: ———: ———. In the proportion his money is used to purchase property in her name, she holds such property in trust for him and his creditors.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

AFFIRMED.

*Geo. L. Edwards* for appellant.

The decree of the circuit court is not authorized by nor founded upon any pleading in the case, and therefore can not stand. Newham v. Kenton, 79 Mo. 382; Muenks v. Bunch, 90 Mo. 500; Reed v. Bott, 100 Mo. 62; Leet v. Gratz, 92 Mo. App. 438.

*Henry A. Hamilton* and *E. Henry Wolfsberger* for respondent.

Where property is acquired in the name of the wife during coverture, the presumption of law is that it was paid for with the means of the husband, and is his prop-

erty; the burden is on her to show that it was acquired by her, with her separate means; in the absence of such evidence the presumption is that it was acquired with his means. In many of the cases the presumption is said to be a violent one. Bump on Fraudulent Conveyances (4 Ed.), sec. 249; Snyder v. Free, 114 Mo. 369; Hoffman v. Nolte, 127 Mo. 120, 134; Lins v. Lenhardt, 127 Mo. 289; Patton v. Bragg, 113 Mo. 601; Sloan v. Torry, 78 Mo. 623, 625; Garrett v. Wagner, 125 Mo. 450, 461; Halstead v. Mustion, 166 Mo. 488, 494.

### STATEMENT.

The evidence is that on January 2, 1897, Jesse Mort borrowed of plaintiff two hundred dollars and gave his promissory note therefor, due six months after date, with Emil Fritsch as security. The note was not paid at maturity and plaintiff brought suit thereon before a justice of the peace, and on September 11, 1901, recovered a judgment against both Mort and Fritsch for the principal and interest ($256.40) then due. The judgment was not paid. In 1902, Mrs. Fritsch, the interpleader, and wife of Emil Fritsch, was advised by her physician to go to Colorado Springs, Colo., for the benefit of her health. She, preparatory to removing with her husband and children to Colorado Springs, advertised her personal property for sale on June 21, 1902. The plaintiff brought suit on his judgment (on the note) in the circuit court of St. Louis county, and in aid of the suit sued out a writ of attachment against Emil Fritsch. The officer to whom the writ of attachment was delivered seized a lot of personal property, as the property of Emil Fritsch, found in the house where he resided with his wife and children, in the city of Kirkwood, St. Louis county. A grand piano was one of the articles attached by the officer. Fritsch and wife gave a forthcoming bond for the property and it was returned to them. Mrs. Fritsch filed her interplea claim-

ing the attached property as her separate and individual property. The allegations of the interplea were denied by plaintiff and the issues thus made were submitted to the court sitting as a jury who, after hearing the evidence, found that the interpleader had purchased the piano partly with her separate means and partly with the means of her husband, Emil Fritsch; that of the latter's money ($237.50) was used in the purchase of the piano, and adjudged the attachment a lien on the piano for the payment of that sum, giving to interpleader the right to discharge the lien on the payment of said sum of $237.50. From this judgment the interpleader appealed to this court.

The title to none of the property attached is involved on this appeal except the piano. The evidence shows that at the time of the marriage of Mrs. Fritsch to her husband (1891) she had saved a few hundred dollars from her earnings; that with this money Mrs. Fritsch purchased a lot in the city of Kirkwood, taking the deed to herself. After purchasing the lot, she borrowed a thousand dollars, giving as security a deed of trust on the lot executed by herself and husband. With this money she erected a dwelling on the lot in which she and her husband resided until the day the attachment was levied. The thousand dollars borrowed were paid mostly by a new loan of nine hundred dollars secured as was the first loan. This debt has not been paid. The evidence shows that the management and control of their household affairs was given over entirely by Fritsch to his wife; that all purchases of furniture and household goods were made by her, in her name and were claimed by her as her separate property. Mrs. Fritsch's evidence tends to show that she kept roomers or boarders from time to time, did some fancy work by which she earned some money and received from her husband from month to month during their marriage, small sums of money earned by him at his trade, and that all the surplus saved from these sources was de-

posited in bank by her to her individual account. No estimate of the amount received by her from boarders or roomers was given at the trial, nor of the income from her fancy work. It is shown that Emil Fritsch earned about twenty-five dollars per week at his trade. He and his wife testified that he furnished the money to pay for the maintenance of the family, consisting of himself, wife and several children, but no estimate is given of what it cost to maintain the family. It is shown that for several years prior to the levying of the attachment Mrs. Fritsch kept her deposit account in a bank at Kirkwood and that both she and her husband drew checks against that account (the checks drawn by her husband being signed "Lena Fritsch by Emil Fritsch"), and that at the date of the levying of the attachment there was a balance of four hundred dollars to the credit of Mrs. Fritsch in the bank. The evidence is that the piano was bought by Mrs. Fritsch on July 15, 1899, for five hundred and twenty-five dollars; that she paid three hundred dollars cash, gave two notes, one for fifty-eight dollars and the other for fifty-nine dollars, and an old piano valued at fifty dollars for the balance of the purchase price; that the bill of sale for the piano was made to her and that she afterwards paid the two notes. Fritsch was a barber and owned no property except the furnishings of his barber shop worth about one hundred dollars.

BLAND, P. J. (after stating the facts as above.) — We think the evidence clearly shows that much of Mrs. Fritsch's bank deposit was of money received from her husband. The evidence is so indefinite as to the amount she earned by her own labor as to make it impossible to form a just estimate of it, but from her testimony we think the inference is reasonable that her earnings were wholly insufficient to make up half of the amount it is shown she deposited from time to time in bank. But it is contended that as the evidence shows Emil Fritsch

had no property except the furnishings of his barber shop, and as he did not at any one time give to his wife money that was subject to be taken on execution or attachment, no fraud was committed against the plaintiff as his creditor. If this contention is good law, then an insolvent debtor may give over to his wife his monthly earnings in small sums and the latter may deposit these gifts in bank to her individual credit or purchase therewith property in her individual name and in this manner in time accumulate a large bank account, or acquire in her own right a large amount of property free and exempt from the claims of her husband's creditors, when if the money had been deposited by him or the property purchased in his own name, it would have been subject to levy. It is the law that a husband has the right to give his personal services and skill to the management of his wife's property without any other consideration than the support of himself, and that the result of his labor on his wife's property is not subject to levy. Seay v. Hesse, 123 Mo. 450; Gruner v. Scholz, 154 Mo. 415; State ex rel. v. Jones, 83 Mo. App. 151; Hibbard, Spencer, Bartlett & Co. v. Heckart, 88 Mo. App. 544. He may also give his wife personal property when such gift is not in fraud of his creditors. Bank v. Simpson, 152 Mo. 638; Sanguinett v. Webster, 127 Mo. 32; Thomas v. Thomas, 107 Mo. 459; Bettes v. Magoon, 85 Mo. 580. But it seems to us that to permit an insolvent husband, having creditors, to systematically and continuously give his wife practically all his earnings and to allow the wife with these gifts to acquire in her own name and for her separate use, personal property and hold it exempt from the just demands of the creditors of her husband, when if the same property had been acquired directly by the husband, it would have been subject to levy, would work a gross fraud on the husband's creditors. The learned circuit judge, as is shown by the declarations of law given and refused, concluded that gifts made in the manner indicated by

Fritsch to his wife were fraudulent as to plaintiff. We think this was the correct view of the law. Shanklin v. McCracken, 151 Mo. 587. We think, furthermore, that the evidence abundantly sustains the finding of the trial. court that a portion of Fritsch's money was used in the purchase of the piano and that the trial court correctly held that in the proportion his money was used in payment for the piano, the interpleader held the piano in trust for him and correctly subjected his interest to the payment of plaintiff's judgment. Jones v. Elkins, 143 Mo. 647.

The judgment is affirmed. All concur.