JONES, Trustee in Bankruptcy of the Estate of HOGAN, Respondent, v. HOGAN, Appellant.

St. Louis Court of Appeals, January 26, 1909.

1. **HUSBAND AND WIFE: Fraudulent Conveyances: Provision for Wife.** A man in unembarrassed circumstances may make a reasonable provision for his wife out of his property when such provision is made with no intent to defraud prior or subsequent creditors. Where a husband settled real estate upon his wife and afterwards she mortgaged it to secure his debt and the property was lost by reason of such mortgage, this was sufficient consideration for an indemnity note given by him to her at the time of making the mortgage.

2. ————: ————: **Intent.** Although a husband may, under the law, contract with his wife and make payments to her and prefer her as a creditor, nevertheless if payments made on debts due from the husband to the wife are made with intent to place his assets beyond the reach of his creditors, such payments are fraudulent.

3. ————: ————: **Married Women's Act.** Under the provisions of section 4339 and 4340, Missouri Annotated Statutes of 1906, giving the wife the right to control and make contracts concerning property which she has received during coverture, she has a right to the rent of the premises owned by her, and used as a dwelling, for the family, and her husband's creditors can not subject such rent to the payment of his debts.

4. ————: ————: **Duty of Husband.** It is the duty of the husband to support his family and where such family lives upon the property of the wife he may pay the wife rent for such property or may agree in lieu of rent to pay interest, taxes and insurance upon the premises; such agreement, and payments in pursuance thereof, are not fraudulent and void as against creditors where there is no intent to defraud.

Appeal from St. Louis City Circuit Court.—*Hon. J. T. McElhinney*, Judge.

REVERSED AND REMANDED (*with directions*).

*Judson & Green* for appellant.

The agreement made between Robert G. Hogan and Cornelia S. Hogan in May, 1901, that he should occupy his wife's separate property as a home for his family and should pay therefor in lieu of rent, the interest on the encumbrance, the taxes, repairs and insurance, was lawful and valid and was not in any sense fraudulent as to the creditors of Robert G. Hogan. Bump on Fraudulent Conv., sec. 218; Brundage v. Munger, 66 N. Y. Supp. 1014; Slay v. Hess, 123 Mo. 450; Grunner v. Scholtz, 154 Mo. 415; Welch v. Morris, 193 Mo. 304; Bartlett & Co. v. Heckart, 88 Mo. App. 544; Curd v. Brown, 148 Mo. 95; State ex rel. v. Jones, 83 Mo. App. 151; Boynton v. Milley, 144 Mo. 687; Webster v. Hildreths, 33 Conn. 451; German v. Davis, 13 Ky. L. R. 590; McFavin v. Carter, 3 Baxt. (62 Tenn.) 325; Dick v. Hamilton, 1 Deady 335; Robinson v. Hoffman, 15 B. Mon. (Ky.) 80.

*Bernard Greensfelder* for respondent.

(1) A participation of the wife in a fraudulent attempt on the part of her husband to conceal or cover up his property for the purpose of putting it beyond the reach of their creditors though an honest or valid debt is thereby secured or paid, will render the whole transaction fraudulent as to both. Balz v. Nelson, 171 Mo. 682; Bank v. Winn, 132 Mo. 87; Riley v. Vaughn, 116 Mo. 176; Sexton v. Anderson, 95 Mo. 379; Farwell v. Myer, 67 Mo. App. 566. (2) It is a fraudulent act on the part of an insolvent to apply his own money to the extinguishment of incumbrances on his wife's land and makes him guilty of hindering and delaying his

creditors and under such circumstances, the creditors may subject such land to the payment of their debts *pro tanto*. Delo v. Johnson, 110 Mo. App. 642; Hardware Company v. Horn, 146 Mo. 129; Garrett v. Wagner, 125 Mo. 450; Kirby v. Bruns, 45 Mo. 234. (3) The intent of the debtor is immaterial. When he makes a voluntary disposition of his property, available for the payment of his existing debts, that his creditors are hindered or delayed in collecting their claims, his acts are fraudulent and void as to them, although he contemplated no wrong. It is the effect of what he does, not the intention with which he does it, that determines its fraudulent character. Needless v. Ford, 169 Mo, 495; Hoffman v. Nolte, 127 Mo. 136; Snyder v. Free, 114 Mo. 371; Jordan v. Buschmeyer, 97 Mo. 94; Shaw v. Tracy, 83 Mo. 224; White v. McPheeters, 75 Mo. 294; Patton v. Casey, 57 Mo. 118; Grocer Co. v. Walker, 69 Mo. App. 556; Cooper v. Standley, 40 Mo. App. 144; Bucks v. Moore, 36 Mo. App. 535.

STATEMENT.—This is a suit in equity wherein the court below charged lots 25 and 26 of Brown Place, a subdivision of St. Louis county, shown by a plat in the office of the recorder of deeds of said county, with a lien for $2,200. The suit was instituted by the trustee in bankrupty of the estate of Robert G. Hogan, defendant's husband, who had been adjudged a bankrupt, for the purpose of having a conveyance to defendant of the title to said premises held fraudulent and void as against said trustee and defendant declared to hold the title for the use and benefit of her husband Robert G. Hogan, and to have the title vested in plaintiff as trustee in bankruptcy for the benefit of said Hogan's creditors. As said, the suit resulted, not in a divestiture of the title out of defendant, but in laying a lien on it to the amount aforesaid. This appeal was prosecuted from the decree. Robert G. Hogan and Cornelia Hogan were married in 1880, and have lived together as

husband and wife since then. She had no means of her own at any time during her married life save what were given to her by her husband or acquired for her by him. Various financial transactions between the husband and wife are gone into in the evidence, but all of them will be omitted except such as touch the question involved in this appeal. Hogan became insolvent in 1897, and remained so until he was adjudged a bankrupt on his voluntary petition September 15, 1903, the proceeding in which plaintiff Jones was appointed trustee in bankruptcy. In 1892 and while Hogan was solvent, his wife executed a deed of trust on their home, the title to which stood in her name, to realize $4,000 for Hogan's use in the coffee business which he was conducting under the style of Robert G. Hogan & Co. In return he executed a note by said firm style to his wife (defendant) for $4,000, payable on demand, with six per cent interest from date, to protect her against loss on account of the deed of trust she had given to raise money for him. Said deed of trust was taken up by another placed on the home and finally she lost the place by the foreclosure of a certain deed of trust she and Hogan had put upon it; either the one given for his benefit, or another. In September, 1894, Hogan purchased another home in Webster Groves, the title to which was put in defendant's name, he paying $2,000 in cash on the purchase price and he and his wife executing a deed of trust for the balance of $6,000. Said property was sold May 15, 1901, and the buyer paid off liens and incumbrances to an amount which exhausted all but $1,300 of the price. In May, 1901, the lots in dispute, to-wit, lots 25 and 26 of Brown's Place, were bought by Hogan and wife for $10,800, on which price the said $1,300 in cash realized from the sale of the second home, was paid, as also $500 of Hogan's money, and a deed of trust was given for the balance. On this balance Hogan afterwards paid $1,000 principal, interest to the amount of $900, taxes to the amount of $300,

insurance premiums amounting to $100 and $900 for improvements on the land. The $1,300 'and the two sums of $500 and $1,000 paid by Hogan, were treated by both him and defendant as payments on the note for $4,000 she held against Hogan & Co. (really no one but her husband) and credits were indorsed on the note for said sums. The court below upheld as valid, the payments of $1,300 realized out of the proceeds of the former home of defendant and $500 paid by Hogan, both of which were made at the time of the purchase, and also the payment of $1,000 made by him December 1, 1902, on the principal. This ruling appears to have been put on the ground that Hogan and his wife had regarded said sums as payments on his debt to her, which debt was treated as bona fide, it having been incurred while Hogan was yet solvent. But the court found the other payments made by Hogan subsequent to the purchase of the lots in controversy, to-wit, $900 for improvements, $900 for interest on the unpaid purchase price, $300 for taxes and $100 for insurance premiums, which were all made after May 1, 1901, "were made with the intent on his part to hinder, delay and defraud his creditors and she (defendant) had knowledge thereof and accepted the same with the same intent." It was found, too, that in the various purchases in the name of his wife prior to 1897 when his insolvency began, Hogan had no intention to hinder, delay or defraud his creditors, but that the purchases for and the conveyances to defendant were voluntary. Defendant testified her husband did not wish to buy a home, saying it was easier to pay rent; but as she was anxious for a home, he made an agreement with her that she should have one and he would pay the taxes, insurance premiums, cost of repairs and interest on the unpaid purchase money in lieu of paying rent to some one else. This agreement is set up in his answer as a defense. A reasonable per annum rental for the house, considering its cost likely would be

about $1,000 and Hogan was earning $5,000 a year and in some years he is said to have earned as much as $18,000.

The portions of the findings of the court we deem material are as follows, and the decree was in accordance with them:

"On May 1, 1901, the defendant and her husband purchased the property in dispute, in this county for the sum of $10,800, paying for it said sum of $1,300 held by defendant, and $500. of the husband's money, and giving a deed of trust for $9,000, balance on the purchase money. The husband has paid on December 1, 1902, $1,000 on the principal of this $9,000 debt, and has paid $900 on improvements on the land, all the interest notes at $225 each six months, except those due November 1, 1903, and May 1, 1904, amounting to about $900 so paid, and all the taxes except for 1903, amounting to $300 so paid, and also insurance $100.

"All the foregoing purchases, conveyances, payments and transactions were made, had and negotiated by said Robert G. Hogan, the said defendant joining in the same and signing and executing papers when required so to do by him, but taking no other part in said transactions.

"Said sums of $1,300, $500 and $1,000 paid by said Hogan on the purchase price of said land, have been treated by him and defendant as payments on said $4,000 note of Robert G. Hogan & Co. and credits have been endorsed thereon for the same shortly after the times of such payments, respectively. The said payment of $1,800 was endorsed in the latter part of June, 1901. They have also endorsed a credit for $500 November 17, 1902, for money paid by him for a carriage and team for defendant.

"No payment made prior to May 1, 1901, by said Robert G. Hogan on behalf of defendant or for her property and no payment made thereafter except said payments of $1,800 and $1,000, was intended by them

cr either of them as payment on account of her said note for $4,000.

"Said lots of land were purchased for the defendant as aforesaid at her request for a home for the family of herself and said Robert G. Hogan; he preferring to rent a home but consenting upon her request to purchase a home, and instead of rent to pay interest, and premiums on loans and taxes, insurance and repairs on the property.

"On May 21, 1903, the said Robert G. Hogan purchased for said defendant Cornelia S. Hogan, seventy shares of stock in the Frisco Land Syndicate, of the par value of $700. But it does not appear what price was paid for the same.

"Said Robert G. Hogan became indebted in 1897 for debts aggregating at least the sum of $8,534.64; which remain unpaid and have been allowed against his bankrupt estate. He has been insolvent since that time, at least. He became a bankrupt on his voluntary petition September 15, 1903, and the plaintiff has been duly chosen and qualified trustee of his bankrupt estate since October 5, 1903.

"The defendant Cornelia S. Hogan had notice of his insolvency at least as early as July 22, 1898.

"There is no evidence of any intent on the part of said Robert G. Hogan to hinder, delay or defraud his said creditors prior to the year 1897; although all said purchases for the defendant and conveyances to her and payments for her and her property were voluntary upon his part and without valuable consideration from her.

"The effect of all such payments by the said Robert G. Hogan for property of the defendant after July, 1897, was to hinder and delay his said creditors; and the said defendant had notice thereof from and after July 22, 1898. Said payments of $1,800 and $1,000

135 App—23

were made and applied between them in part payment of said note of Hogan and Company to the defendant. The other payments made by the said Robert G. Hogan for and on account of said property after May 1, 1901, were made with the intent on his part to hinder, delay and defraud his creditors, and she had knowledge thereof and accepted the same with the same intent.

"The court sustained defendant's objection to said Robert G. Hogan's schedule of debts filed in his said bankruptcy proceedings, and his affidavit to the same, and strikes out the same and does not consider the same in the evidence, in making the foregoing finding of facts.

"Upon the foregoing facts the court further finds, as matter and conclusion of law, as follows:

"The transfers and purchases by said Robert G. Hogan to and for the said Cornelia S. Hogan, of said real estate on Compton Avenue on September 11, 1885, and of said home at Webster Groves about September 17, 1894, and all payments made upon the deeds of trust upon said property and otherwise for her benefit up to the time of his insolvency in 1897, were lawful provisions for her; and the legal and equitable title in and to the said real estate, as well as the said sum of $1,300 realized as proceeds of the sale of the said home at Webster Groves was vested in said defendant.

"The said note from the said Robert G. Hogan & Co. for $4,000 dated November 12, 1892, to the defendant, was and is a lawful and valid obligation of the said Robert G. Hogan upon which he might lawfully pay and did lawfully pay to her the said sum of $1,800 treated by them as so paid May 1, 1901, and also the said sum of $1,000 December 1, 1902; although in fact $1,300 of said sum of $1,800 belonged to the defendant as her separate property as aforesaid.

"The other payments made by the said Robert G. Hogan upon said real estate mentioned in the petition and in dispute, being $900 upon improvements, $900

for interest, $300 for taxes and $100 for insurance, amounting to the sum of $2,200 were voluntary payments, made by him without consideration from her, and made by both of them with intent to hinder, delay and defraud his said creditors above mentioned, who are represented herein by the said plaintiff as trustee in bankruptcy.

"The said shares of stock in the Frisco Land Syndicate were not acquired for the said Mrs. Hogan in any manner connected with the title to said real estate, and with them the court has nothing to do in this suit.

"The court further finds that defendant Robert G. Hogan has no homestead in the said real estate in dispute.

"And the court thereupon finds and concludes, that the said real estate in dispute is subject to the lien of said deed of trust for the balance of $8,000 indebtedness with interest, and subject to said deed of trust the defendant Cornelia S. Hogan has an interest of the value of $2,800 in the same and the said Robert G. Hogan has an interest in the same of the value of $2,-200, in so far as the said property may be of sufficient value, that is to say, the defendant is entitled to twenty-eight fiftieths (28-50) and the said Robert G. Hogan to twenty-two fiftieths (22-50) of the same and to the extent of his said interest the said defendant Cornelia S. Hogan holds the legal title in trust for him and for his said creditors and the plaintiff as their representative, and his said interest should be vested in the plaintiff as trustee in bankruptcy of the estate of said Robert G. Hogan, to be applied to the satisfaction of said debts according to law; and a decree should be entered in favor of plaintiff accordingly."

GOODE, J. (after stating the facts).—The court below found the purchases of property made by Hogan prior to 1897 in the name of his wife were voluntary,

but as he was then unembarrassed by debts, held they were lawful, as being no more than a reasonable provision for her out of his property and made with no intent to defraud prior or subsequent creditors. [Eddy v. Baldwin, 32 Mo. 369; Fehlig v. Busch, 165 Mo. 144.] The same ruling was made regarding the note for $4,000 executed by Hogan under the style of Robert G. Hogan & Co. to indemnify her against loss of the homestead mortgaged to raise money for him. Plaintiff's counsel argues the mortgage was satisfied which this note was given to indemnify her against, and hence the note ceased to be a valid obligation. The property was not sold from Mrs. Hogan under this mortgage, but under a prior one; but the conclusion is reasonable that she lost it in consequence of the mortgage given for his benefit increasing the incumbrances on it to an amount that could not be paid. It is true that after the property had been sold, the note secured by the mortgage executed to raise money for Hogan, was satisfied, partly by the proceeds of the foreclosure and partly by payments made by him. Nevertheless, his note of indemnity was given to protect his wife against the loss of her home, and as she lost it in consequence of having incumbered it for his benefit, it looks like the consideration for the indemnity remained intact. The court found, too, the payment of $500 made by Hogan on the purchase price of the lots in question at the time of the purchase (May 1, 1901) and the further payment of $1,000 on the price made by Hogan December 1, 1902, were treated by Hogan and wife as credits on his note to her and that it was lawful for him to pay said sums for her. The court found $1,300 of the sum of $1,800 entered as a credit on the note, actually belonged to Mrs. Hogan as the proceeds of her separate property; and this being true, the credit was, to that extent, a mistake. Those matters were all settled in favor of Mrs. Hogan by the findings and decree, and as plaintiff did not appeal, and the items involved in de-

defendant's appeal are independent of them, we really have nothing to do with them. All the transactions between the husband and wife were upheld by the court as valid except these four items: $900 expended by Hogan for improvements on the lots in question, $900 interest on the note given for part of the price, $300 for taxes and $100 for insurance premiums; which items the court found were not intended by either Mr. or Mrs. Hogan as payments on the note of indemnity. This finding was not made in so many words, but is covered by the finding that no payment made prior to May 1, 1901, by Hogan for the benefit of his wife or her property, and none made thereafter except the sums of $1,800 and $1,000, was intended as a payment on said note. The court found Hogan paid said four items without any consideration moving from his wife, and that they were "made by both of them with intent to hinder, delay and defraud his said creditors above mentioned." Elsewhere the findings recite that all payments made on account of the property in dispute after May 1, 1901, except the sums of $1,800 and $1,000, "were made with the intent on his part to hinder, delay or defraud his creditors and she (i. e., Mrs. Hogan) had knowledge thereof and accepted the same with the same intent."

The briefs of counsel go at length into the question of whether, after Hogan's wife knew he was insolvent, there could be a valid contract between them for him to expend money for the benefit of the homestead in lieu of rent he otherwise would pay for a home. That is to say, whether, if he was insolvent, any payments to her or for her benefit must be regarded as voluntary and in fraud of his creditors. The findings of the court below hardly call this question into the case; a lien having been fastened on Mrs. Hogan's property for the four items mentioned, on the ground that Hogan paid them with intent to defraud his creditors and she partook of this intention. If these findings are justified

by the evidence, the decree ought to be affirmed; because, though the law may have accorded them the right to contract in good faith for the payments, if they used this right in a colorable mode, their real design being to screen part of his means from process for his debts, the payments were fraudulent. [Balz v. Nelson, 171 Mo. 682, 689.] Study of the evidence has convinced us the agreement between Mr. and Mrs. Hogan was not made to hinder or defraud creditors, but in good faith for its avowed purpose. The law laid on Hogan the duty to provide a home for his family (Gruner v. Scholz, 154 Mo. 415, 426; Brundage v. Munger, infra), and he preferred to discharge this duty by renting one; but yielding to Mrs. Hogan's wish, a home was purchased, largely on credit, and the title taken in her name, she paying $1,300 of the price, or, we may say, $2,800 of it; for the court found the payments of $500 and $1,000 made by Hogan, went in discharge of what he owed her. The reasonable rental value of the premises was one thousand dollars a year, and the sums paid by Hogan as rent, or in lieu of what he would have paid for the rent of another home equally desirable, amounted to $2,200 and extended over three years. Therefore he paid a little over seven hundred dollars a year, or considerably less than a reasonable rental for the property. In comparison with his earnings, a home of that cost was not an excessive provision for his family. Accepting these facts as true, the arrangement between Mr. and Mrs. Hogan was natural and reasonable. As she owned a residence, likely it was more economical and satisfactory for the family to live there than elsewhere, if Hogan would furnish the money needed to discharge the interest on the unpaid purchase price, make repairs and pay taxes and insurance premiums. No other resource was available from which to procure money for these necessary disbursements, and a self-respecting husband and father could do no less than advance it, if he was able to do so. Moreover,

the question occurs how Hogan's creditors would be damaged more by his making these payments than they would be by his paying rent.

Our next inquiry is whether the arrangement by which Hogan was to discharge the items in controversy in lieu of paying rent, fell within the pale of law. Cases not decided upon statutes vesting in married women the exclusive right to the rents and profits of their real estate, and giving them the right to contract, look adverse to the validity of the agreement, but are not in point in this State because their doctrine has been abrogated by legislation. "The rents, issues and products of the real estate of any married woman, and all moneys and obligations arising from the sale of such real estate, and the interest of her husband in her right in any real estate which belonged to her before marriage, or which she may have acquired by gift, grant, devise or inheritance during coverture, shall, during coverture, be exempt from attachment or levy of execution for the sole debts of her husband," etc. [2 Mo. Ann. Stat., sec. 4339.] "All real estate and any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest or inheritance, or by purchase with her separate money or means, or be due as wages of her separate labor, or has grown out of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband," etc. [2 Mo. Ann. Stat., sec. 4340.] Under those statutes any rent obtained for Mrs. Hogan's property would have been her separate property and not disposable by her husband or subject to his debts, and as the duty to provide a home for the family was his and not hers, she was under no obligation to permit the use of her premises by the family without compensation. But if she was disabled by the law from

contracting with him for the payment of rent, perhaps his creditors might follow the payments he made for her as voluntary alienations of his assets made while he was insolvent. Conveyances or transfers of property by an insolvent debtor upon no consideration, are fraudulent as against existing creditors, regardless of an intent to defraud. [White v. McPheeters, 75 Mo. 286, 294.] And a transfer by a husband to his wife will be scrutinized by a court with care, to ascertain whether it was voluntary or for a consideration, and bona fide or meant to defeat creditors. [Gruner v. Scholz, 154 Mo. 415.] The case just cited is a strong authority, however, in favor of upholding agreements in favor of a home for a debtor's family when honestly made. The opinion well says: "Our anxiety to uncover fraud must not lead us to deny that men still have natural affections and say that gratitude no longer exists." In the Revised Statutes of 1899, a section appeared which empowered a married woman to act as a *femme sole,* transact business on her own account, contract and be contracted with, sue and be sued, enforce and have enforced against her property such judgments as might be rendered for or against her, and sue and be sued at law or in equity, with or without her husband being joined as a party. [R. S. 1889, sec. 6864, R. S. 1899, sec. 4335; 2 Mo. Ann. Stat. 4335.] In Rice v. Sally, 176 Mo. 107, 129 et seq., the Supreme Court held the intention of the Legislature in the enactment of the several statutes cited supra; was to remove the legal disabilities of a married woman, and that the language of the statutes was broad enough to permit her to enter into contracts with her husband which would be as enforceable as those made with other persons. It follows there was no legal obstacle to Mr. and Mrs. Hogan agreeing he should pay, in lieu of rent, the expenses incident to the maintenance of her homestead, and a contract for that purpose was not necessarily voluntary and fraudulent as to creditors, but would rest

upon a consideration, and its validity as against creditors depend on the purpose which inspired it. We have declared our belief that the purpose of Mr. and Mrs. Hogan was honest.

Many cases are cited by counsel in support of their respective contentions and we have read them all, but without finding reason to doubt that our conclusion about the law and the facts of this case are sound. We will compare with it a few of the authorities relied on by plaintiff. In Kirby v. Bruns et al., 45 Mo. 234, an insolvent debtor had put improvements amounting to $2,500 or $3,000 on his wife's land and the land was charged with a lien for it. This case arose before husband and wife could contract with each other; and, indeed, it does not appear he made the improvements pursuant to any agreement or for a consideration. The facts in Garrett v. Wagner, 125 Mo. 450, are similar in many ways to those before us, but the contract by which that husband agreed to pay the building and loan dues on his wife's property in lieu of paying rent, was entered into before a married woman could enter into contracts and, therefore, the payments were voluntary on his part. Moreover, there were vivid traces of actual fraud in that case which do not stain this one. In Hardware Co. v. Horn, 146 Mo. 129, the defendant Horn had paid out of his own means part of the purchase price of property taken in his wife's name. The payment was made when he was insolvent and not upon an agreement or for a consideration, and being purely voluntary, was, of course, fraudulent as to creditors. In Wolfsberger v. Mort et al., 104 Mo. App. 261, the insolvent husband had mingled his money with his wife's in a joint bank account, out of which the property in controversy (a piano) was purchased by her. It further appeared he furnished the money to meet the family expenses. Under those circumstances we held the property could be proceeded against for his debt because "to permit an insolvent husband, having credi-

tors, to systematically and continuously give his wife practically all his earnings, and to allow the wife with these gifts to acquire in her own name and for her separate use, personal property and hold it exempt from the just demands of the creditors of her husband, when if the same property had been acquired directly by the husband, it would have been subject to levy, would work a gross fraud on the husband's creditors." The controlling fact in Delo v. Johnson, 110 Mo. App. 642, was that Johnson had paid off mortgages with his own means on his wife's property to the amount of more than $20,000 when he was insolvent. Manifestly these payments were void as to creditors because there was no consideration. Those cases are perhaps the most relevant of any cited for plaintiff on the proposition that the payments by Hogan in lieu of rent were illegal. The case cited *infra* relied on as authorities for the same doctrine, are out of point because of a number of distinguishing facts; mainly because the payments or transfers of property by husbands to wives, did not take place pursuant to an agreement and for a consideration rendered by the wife, or because the decisions were controlled by the common law incapacity of married women. [Dillman v. Nadelhoffer, 162 Ill. 625; Burt v. Gorzian, 102 Fed. 937; Wright v. Craig, 66 Pac. (Ore.) 807; Burt v. Timmons, 29 W. Va. 441; Lynde v. McGregor, 95 Mass. 182; Farr v. Hauenstein, 61 Atl. (N. J.) 147.] Some of those cases (*e. g.* Wright v. Craig and Lynde v. McGregor) distinctly recognize the right of the husband to prefer his wife as a creditor, or reimburse her for money which she in good faith had advanced for him, by taking the title to property in her name or making payments for her benefit. The same proposition was declared by our Supreme Court in Hart v. Leete, 104 Mo. 315, 337, wherein it was said: "That deed antedates the judgment under which plaintiff purchased the property, and, if it was made in good faith in payment of a debt due the wife, it should stand; for

a debt due the wife stands on as good footing as a debt due to any other person and she may be given a preference over other creditors." The exact question at bar has not been determined in this jurisdiction, but cognate questions have been. An insolvent husband may render services to his wife in managing her business, or give time and labor to the improvement of her separate property, without his creditors acquiring a right as against her or her property. [Seay v. Hesse, 123 Mo. 450; Gruner v. Scholz, 154 Mo. 415; Bartlett v. Heckart, 88 Mo. App. 544; Magees v. Kaiser (Miss.), 121 L. R. A. 623 and note.] These appropriations for her benefit are kept, by some courts at least, within moderate bounds. [Boggess v. Richards (W. Va.), 26 L. R. A. 537.] In a standard treatise it is said if a debtor lives in his wife's property, he may keep it habitable and in repair; and, in reasonable limits, this may be regarded as a proper discharge of his obligation to support his family. Further, that an insolvent debtor may enter into a contract to work for another in consideration of the support of his family, and if a wife has a separate estate, she may employ her husband and pay him for services performed on it. [Bump, Fraudulent Conveyances (4 Ed.), secs. 218, 223, 224 and cases cited in the notes.] As stated, transfers of money or property from an insolvent husband to his wife must be looked into carefully, because they afford opportunities for the easy evasion of his liabilities. He ought not to be allowed to divert more of his earnings or property to the use of his family, or under some arrangement with his wife, than is necessary. But while this is true, it is also the law that if an agreement between man and wife is found to have been made in good faith and on a consideration, and to be just and reasonable, the circumstances considered, it will be upheld against the attacks of creditors, like similar transactions between other parties. [Seay v. Hesse, 123 Mo. loc. cit. 464.] Agreements similar to the one in hand have engaged

the attention of courts of other jurisdictions and have been upheld. In Gage v. Dauchy, 34 N. Y. 293, the property in dispute had been seized in execution as the husband's, whereupon the wife sued in trespass. She owned a farm which he worked on, but not under an agreement for wages, and he also managed her trading. The property had been bought with money obtained from the sale of grain grown on the farm, and on the theory that his labor helped raise the crops, his creditors levied on the property. This case was decided before husband and wife had power to contract with each other in New York, but when there was a statute similar to ours, giving her the separate use of the rents, issues and profits of her real estate, and excluding the same from the disposal of her husband or liability for his debts. The court said that as the Legislature left the husband the right, and made it his duty, to live with his wife, he must necessarily have lived on her farm, if they had no other place to live, and it could not have been intended to deprive the wife, in that contingency, of the benefit of his services; that the law required him to support his wife and family, and their entire support might be cast on him while she used the rents and profits of her estate to enlarge her wardrobe or engage in business on her own account. We notice this case because its doctrine, that the law absolutely requires a husband to support his family, was approved expressly by our Supreme Court in Seay v. Hesse and Gruner v. Scholz, and in the former case the court said also, by way of quotation from Gooper v. Ham, 49 Ind. 393: "It is firmly settled the first and highest obligation of a husband is to provide for the support, maintenance and education of his family, and that, after this has been accomplished, he should give the best exertions of his mind and body to accumulate means for the payment of his debts." In the same connection the court said Hesse might give his personal services and skill to the management of his wife's property with-

out any further compensation than the support of his family. In that case the attempt was to charge real estate owned by Mrs. Hesse with a judgment in favor of her husband, on the ground that he bought the property in her name while he was insolvent, for the purpose of defrauding creditors. Originally her own money was used to buy property whose value afterwards passed into the estate sought to be charged, but it appeared the husband's labor had contributed also toward paying for said estate. Nevertheless it was exonerated from liability for his debts. ·In Gruner v. Scholz, supra, very strong expressions regarding the sanctity, as against creditors, of means devoted by a husband and father to the necessities of his family, are quoted from a text work and from judicial decisions; remarks of the same tenor as those made in Bump's treatise. In Brundage v. Munger, 66 N. Y. 1014, we have a case in all respects like this one. That husband had conveyed a homestead to his wife when solvent and had afterwards paid money for insurance, taxes, interest on a mortgage executed for the purchase price of the home, and repairs. These payments were made pursuant to an understanding which was satisfactory to both parties, that they should be in lieu of rent, but with no positive agreement to that effect. Creditors of the husband sued for a lien on the property and were denied, the payments being held valid. In Robinson v. Hoffman, 15 B. Mon. (Ky.) 80, an insolvent husband had paid out several hundred dollars for repairs on his wife's property used by them as a homestead, and his creditors attempted to lay a lien on the property to the extent of the payments. In Dick v. Hamilton, 1 Deady 322, the husband had disbursed money while insolvent in improving a homestead owned by his wife and occupied by the family. We refer to the opinions in those cases for sound expositions of the grounds for holding the agreement in question valid. The courts disposed of the causes on these rules of law: it is the

duty of a husband to support his family and furnish them a home. A wife need do nothing toward these ends out of her separate estate, and his creditors will not be harmed by his paying reasonable amounts to her or for her instead of paying rent to some one else.    Other cases in point are: Graumen v. Davis, 13 Ky. L. Rep. 591; McFavin v. Carter, 62 Tenn. 335; Webster v. Hildreths, 33 Vt. 457.    We have no doubt of the capacity of Hogan and his wife to contract as they did, that a valuable consideration supported their contract and that it contemplated what was no more than a reasonable provision for the family.

The judgment will be reversed and the cause remanded with the direction to the court below to dismiss plaintiff's bill.    All concur.